**Roger T. SWEITZER, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–337.

United States Court of Veterans Appeals.

Argued July 27, 1993.

Decided Oct. 22, 1993.

William S. Mailander, with whom Michael P. Horan, Washington, DC, was on the briefs, for appellant.

Sara B. Lake, with whom Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Rosalind E. Masciola, Washington, DC, were on the pleadings, for appellee.

Before FARLEY, MANKIN and STEINBERG, Judges.

FARLEY, Judge, filed the opinion of the Court in which STEINBERG, Judge, joined. MANKIN, Judge, filed a dissenting opinion.

FARLEY, Judge:

This appeal presents an issue of statutory interpretation: whether appellant "suffered an injury, or an aggravation of an injury ... as a result of having submitted to an examination...." 38 U.S.C.A. § 1151 (West 1991). In a decision dated October 23, 1991, the Board of Veterans' Appeals (Board) held that appellant had not submitted a well grounded claim to entitlement to compensation under § 1151 because any additional lower back disability he may have sustained was not the result of hospitalization, medical treatment, or examination by the Department of Veterans Affairs (VA). The Court has jurisdiction

pursuant to 38 U.S.C.A. § 7252(a) (West 1991). For the reasons set forth below, the Court will affirm the Board's October 1991 decision.

## I. Facts

The legal issue presented for review arises in a factual context that is not in dispute. On February 2, 1990, appellant reported to the radiology department of the VA Medical Center in Long Beach, California, for a scheduled upper gastrointestinal x-ray examination. R. at 51, 105, 107. Upon checking in, appellant was advised that there would be a twenty-minute wait. R. at 51. He decided to take a walk, left the clinic area, and proceeded to the first floor of building 1 where he began reading a bulletin board at the intersection of two corridors. *Id.* While appellant was squatting down to look more closely at an advertisement for an automobile, an unidentified patient in a motorized wheelchair rounded the corner, struck appellant in the lower torso, and knocked him to the ground. *Id.;* R. at 105, 107.

Appellant reported the incident to hospital personnel and received medical attention for lower back pain which commenced after he was struck by the wheelchair. A lumbar spine x-ray taken after the incident revealed degenerative joint disease, but no obvious fracture. R. at 51. The staff physician who examined appellant noted that appellant had no focal tenderness, and that his gait was normal. *Id.* After the wheelchair incident, appellant received outpatient treatment and physical therapy for continual low back pain. R. at 54.

On July 5, 1990, appellant filed a claim for benefits under 38 U.S.C.A. § 1151 on the ground that his non-service-connected back condition had been aggravated as a result of the February 2, 1990, mishap. On July 27, 1990, the RO rendered a decision concluding that appellant did not suffer from any residuals from the February 1990 accident, and that appellant's non-service-connected back disability did not increase as a result of "VA authorized hospitalization, medical or surgical treatment, vocational rehabilitation or examination." R. at 56–57. Appellant filed a timely Notice of Disagreement, and the VA provided appellant with a Statement of the Case. In January 1991, appellant perfected his appeal to the Board, and requested a personal hearing. R. at 105. During his testimony, appellant reiterated the circumstances surrounding the accident, described the condition of his back prior to the accident as "pretty good," and stated that his having been struck by the wheelchair aggravated his back condition to the extent that he had required follow-up clinical treatment and physical therapy. R. at 107–11. On March 1, 1991, an RO hearing officer determined that the appellant had not sustained additional disability as a result of the wheelchair incident and thus appellant was not entitled to compensation under 38 U.S.C.A. § 1151. In a decision issued three days later, the RO confirmed and continued the July 27, 1990, denial of appellant's claim. R. at 115.

## II. Analysis

Section 1151 of title 38, United States Code, provides in pertinent part:

Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation ... *or as a result of having submitted to* an examination ..., and not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter ... shall be awarded in the same manner as if such disability, aggravation, or death were service-connected....

(Emphasis added.)

As in all questions involving statutory interpretation, our analysis begins with an examination of the language of the statute itself. "If the statutory language is plain, and its meaning clear, no room exists for statutory construction. There is nothing to construe." *Gardner v. Derwinski,* 1 Vet.App. 584, 587–88 (1991); 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.01 (5th ed. 1992) (SUTHER-

LAND'S). Nonetheless, "[d]etermining a statute's plain meaning requires examining [not only] the specific language at issue [but also] the overall structure of the statute [as well]." *Gardner*, 1 Vet.App. at 586. Therefore, "each part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole." SUTHER-LAND'S, § 46.05; *see Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992). In the instant case, the language in question is the phrase "having submitted to."

▮▮▮ When the statutory phrase "having submitted to an examination" is "construed in connection with every other part or section so as to produce a harmonious whole," we conclude that any injury or aggravation of an injury, in order to be compensable under § 1151, must have resulted from the examination itself, not from the process of reporting for the examination. The statute does not address disabilities that are merely coincidental with the receipt of VA treatment or which are a result of actions by the claimant, i.e., *applying for or seeking* hospitalization, treatment, or examination.

This construction of the statute is consistent with the legislative history. Originally, only those persons who suffered an injury or the aggravation of an existing injury as the result of "training, hospitalization, or medical or surgical treatment" by the VA were eligible to be compensated as though the injury or aggravation resulted from military service. World War Veterans' Act, ch. 320, § 213, 43 Stat. 607, 623–24 (1924) [hereinafter the Act]. In 1925, § 213 of the Act was amended to include within its terms persons suffering an injury or aggravation of an existing injury as a result of "having submitted to [an] examination" ordered by the VA. *Id.*, ch. 553, § 11, 43 Stat. 1302, 1308 (1925). Section 7701 of Regulation 167, Regulations and Procedure, United States Veterans' Bureau, Part 1, reflects that in March 1927 compensation awards under § 213 of the Act were clarified further:

> Sec. 7701. Disability compensation under section 213, World War [V]eterans'

[A]ct, 1924, as amended, will be payable only when it is determined (1) that there is an additional disability, and (2) that such additional disability resulted from an injury or an aggravation of an existing injury suffered as the result of training, hospitalization, medical or surgical treatment, or examination.

(A) The determination that additional disability exists will be based upon a comparison of the beneficiary's physical condition immediately prior to the injury on which the claim for compensation ... is based with his subsequent physical condition resultnig [sic] from such injury.... [A]s applied to examinations, the physical condition prior to the injury will be the condition at time of *beginning the physical examination as a result of which the injury was sustained.*

(B) In determining whether such additional disability results from an injury or an aggravation of an existing injury suffered as a "result of training, hospitalization, medical or surgical treatment or examination," the following considerations will govern:

(1) It will be necessary to show that the additional disability is actually the result of such injury or an aggravation of an existing injury ... and *not merely coincidental therewith.*

(Emphasis added.) Thus, the legislative history can be read as reinforcing the conclusion that compensation under 38 U.S.C.A. § 1151 is to be awarded for an increase in disability that is the result of action by the VA, and not from a coincidental event.

In conjunction with § 1151, the VA promulgated sections 3.358 and 3.800 of title 38 of the Code of Federal Regulations. *See* 38 C.F.R. §§ 3.358, 3.800 (1992). While both regulations address an award of compensation if a veteran suffers additional disability or the aggravation of a disease or injury, they differ slightly in language. Whereas § 3.358(a) requires that the additional disability or the aggravation of an existing disease or injury for which an appellant claims entitlement to compensation be the *"result of* training, hospitalization,

medical or surgical treatment, or examination ..." (emphasis added), § 3.800(a) provides for the award of compensation in situations

> [w]here disease, injury, death or the aggravation of an existing disease or injury occurs as *a result of having submitted to* an examination, medical or surgical treatment, hospitalization or the pursuit of a course of vocational rehabilitation....

(Emphasis added.) Understandably, appellant stresses § 3.800(a) and urges the Court to interpret his arrival at the VA, coupled with his signing in at the clinic where the examination was to be conducted as commensurate with his "having submitted to" an examination for § 1151 purposes. However, unlike the dissent, we find the Secretary's argument, i.e., that the phrase "having submitted to" means that the actual physical examination has commenced, to be more in keeping with the plain meaning of the statute, as noted above.

Our dissenting colleague speaks of appellant's having been within the "control and authority of the VA" and of the VA's "duty to insure his safety," and concludes that "the VA was responsible for taking all reasonable precautionary measures to assure the appellant's safety." Such notions, which do have hallowed status in the halls of tort law in general and of premises liability in particular, are not relevant here where the issue is the construction of a statute according veterans benefits. Indeed, appellant might well have raised such legal theories in a suit against the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2672–2680, but that is not the matter before us. It also appears that our colleague would place the accent on the first word of the statutory phrase "submitted to an examination" and thus deem anything that might happen after the purely ministerial act of the patient's signing in to be covered by the language of § 1151. Without dwelling upon the mischief that could result from such an interpretation, we note only our belief that § 1151 contemplates an increase in disability that results from an examination rather than one coincidentally subsequent to the mere signing of one's name or the checking of a block or two on a form.

### III. Conclusion

Section 1151 is not broad enough to encompass the factual situation presented in this case. We hold that appellant suffered an injury that was coincidental to his reporting for an examination, rather than one that was "a result of [his] having submitted to an examination." 38 U.S.C.A. § 1151. Accordingly, the October 23, 1991, decision of the Board is AFFIRMED.

MANKIN, Judge, dissenting:

The members of the majority fail to recognize that submitting to an examination pursuant to 38 U.S.C.A. § 1151 involves the concepts of both location and process. In my view, the Department of Veterans Affairs (VA) examination is the sum total of a process, rather than simply an instant in which the physician lays hands upon the veteran in the examination room. I would hold that the examination in the instant case had begun at the moment when appellant checked in, and that it was at that moment that he submitted to an examination for the purposes of 38 U.S.C.A. § 1151 (West 1991).

I agree with the majority that if, for example, a veteran checks into a VA facility for a scheduled examination and is told to wait twenty minutes, but leaves the facility and is subsequently hit by a car, he would not be entitled to benefits under 38 U.S.C.A. § 1151. In this hypothetical situation, while the examination process commenced when the veteran checked in at the scheduled time, the injury did not occur on VA premises. Since he was not located on VA property, they had no duty to insure his safety. Accordingly, this veteran is not covered by the statute because his injury did not occur on VA property.

In contrast, the appellant reported for an examination at the VA Medical Center (VAMC) on February 2, 1990, at the hour appointed by the VA. After checking in, he was informed that there would be a twenty minute wait. Appellant went for a

walk on the VA premises and was struck in the lower *torso* by an unidentified patient in a motorized wheelchair. At no time did the appellant leave the VA facility.

In this case, appellant submitted to an examination at the moment he checked in because he was under VA authority and control. Thirty-eight U.S.C.A. § 1151 provides that a veteran who suffers "an injury, or an aggravation of an injury *as the result of having submitted to an examination*" shall be awarded benefits. 38 U.S.C.A. § 1151 (emphasis added). At the moment appellant checked in he submitted to the control and authority of the VA. He remained under that control and authority while on VA premises. Accordingly, at the moment appellant checked in and for so long as he remained on VA premises, the VA was responsible for taking all reasonable precautionary measures to assure the appellant's safety.

The reality is that appellant would not have sustained an injury unless he had reported for the VA examination. As a result of the VA's process and procedure he was required to wait for twenty minutes. He remained on the VA premises and remained within the control of the VA. Now it appears that he has the burden of an additional disability.

Although during oral argument counsel for the Secretary cited seventy years of legislative history which she interpreted as supporting the Secretary's position that appellant did not submit to an examination for the purposes of 38 U.S.C.A. § 1151, counsel was unable to point to a single statement in the legislative history supporting the Secretary's construction of the statute. Where there is no clear evidence of congressional intent, the plain meaning of a statute must prevail. *Gardner v. Derwinski*, 1 Vet.App. 584, 587 (1991).

Furthermore, counsel for the Secretary also argued during oral argument that 38 U.S.C.A. § 1151 is activated when the diagnostic process has begun. That is, 38 U.S.C.A. § 1151 is applicable when there is an attempt to diagnose or treat the condition. This construction fails to explain or distinguish between the difference in the language of two clauses in the statute— "as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation" and "as a result of having submitted to an examination." 38 U.S.C.A. § 1151. By treating these two clauses in the same way, the Secretary reads "having submitted to" out of the statute, making it superfluous. Clearly, Congress could have provided for a grant of benefits for injuries incurred "as the result of" examinations. The fact that it did not, I believe, is significant. Looking at the plain meaning of the words "as the result of having submitted to an examination," 38 U.S.C.A. § 1151, I conclude that appellant, who was injured while under the authority and control of the VA, had submitted to an examination under 38 U.S.C.A. § 1151 and is therefore, entitled to benefits under the statute.

Because the BVA determined that 38 U.S.C.A. § 1151 is not applicable in this case, it did not make any factual determinations with regard to whether appellant's prior back injury was aggravated by the accident. I would remand in order for the Board to review the medical evidence prior to and after the accident. *See* 38 U.S.C.A. § 5107(a) (West 1991); *Green v. Derwinski*, 1 Vet.App. 121, 123–24 (1991). I would also remand for the Board to assist appellant in developing his claim by providing a medical examination to determine his current condition and the extent to which his back condition was affected by the accident. *Id.*