**Ophel H. ZEVALKINK, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1683.**

United States Court of Veterans Appeals.

June 2, 1994.

Michael P. Horan, Washington, DC, was on the pleadings, for appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Amanda Linn Cashion, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, MANKIN, HOLDAWAY, IVERS, and STEINBERG, Judges.

STEINBERG, Judge, filed the opinion of the Court. MANKIN, Judge, concurred in the result.

STEINBERG, Judge:

█ The appellant, widow of World War II veteran James B. Zevalkink, appealed pro se from a June 10, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying her claim for accrued benefits under 38 U.S.C. § 5121(a). *Ophel H. Zevalkink,* BVA 91–19719 (June 10, 1991). The Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance. Because this case presents legal issues of first impression, single-judge summary disposition is not appropriate. *See Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). The Secretary's motion will be denied and the Court will affirm the BVA decision.

On August 17, 1993, a panel of the Court issued an opinion in this case affirming in part and vacating in part the BVA decision and remanding the matter to the Board for readjudication. On September 27, 1993, the appellant, pro se, filed correspondence which the Court construed as an out-of-time informal motion for reconsideration of its decision. On October 6, 1993, the Court ordered the Secretary to respond to the appellant's motion. On October 26, 1993, Michael P. Horan, Esq., of the Paralyzed Veterans of America (PVA) filed an appearance as attorney for the formerly pro se appellant. Pursuant to the Court's order, on November 2, 1993, the Secretary filed a response to the motion for reconsideration. On January 3, 1994, the appellant, through counsel, filed an extensive reply to the Secretary's response. The Court is indebted to the PVA and Mr. Horan for the service they have performed in representing the appellant on the motion for reconsideration.

The motion for reconsideration, having been considered, sua sponte, by the Court en banc, is granted. The August 17, 1993, panel opinion is vacated, and this opinion is issued in its stead. The Court notes that this opinion differs in result from the vacated opinion only as to the issue of service connection for myalgia and rheumatism, although the analysis as to the nature of the accrued-benefits claim has been substantially revised.

## I. Background

Certain survivors of a deceased veteran are eligible to receive payment from the Department of Veterans Affairs (formerly Veterans' Administration) (VA) of "accrued benefits" based upon the deceased veteran's statutory entitlement to such benefits. "Accrued benefits" are defined as:

> [P]eriodic monetary benefits (other than insurance and servicemen's indemnity) under laws administered by the Secretary to which an individual was entitled at death under existing ratings or decisions, or those based on evidence in the file at date of death ... and due and unpaid for a period not to exceed one year....

38 U.S.C. § 5121(a). In the instant case, the appellant's claim for accrued benefits is based essentially upon claims that the veteran was entitled, based upon evidence on file with VA at the date of his death, to service connection for a kidney disorder, hypertension, myalgia, and arthritis.

The veteran had active service with the United States Army from February 16, 1943, to December 11, 1945. R. at 2. His service entrance and separation examinations were negative for any pertinent defects. R. at 6, 22–24. An April 1944 service medical record (SMR) (although an April 1987 regional office (RO) decision would later refer to this record as being from "4/42", the veteran did not enter service until 1943) refers to the veter-

an's having been treated for "myalgia, marked, ... both thighs and legs", which was described as possibly rheumatic. R. at 134, 136, 209. The veteran's SMRs do not reflect any other in-service complaints or treatments pertinent to a kidney condition, hypertension, myalgia, or arthritis.

In September 1965, the veteran filed a claim for service connection for a kidney disorder. R. at 26–29. He stated that a kidney disorder had been noted at the time of his separation examination, and that service physicians had wanted to hospitalize him for that condition at that time but that he had refused treatment. R. at 27. After obtaining records of the veteran's treatment by private physicians in 1965 (R. at 30–38), none of which showed any treatment for kidney problems, a VARO denied the claim in December 1965. R. at 40.

Records of the veteran's private medical treatment in 1965 and 1969 indicate that the veteran had sustained a spinal injury in a 1963 occupational accident during the course of his employment as a carpenter. R. at 31–34, 37–38, 49–51. A report of a VA medical examination in October 1972 noted no kidney or other genitourinary disabilities. R. at 57. A June 1973 VA medical examination did not reveal any kidney abnormalities (R. at 63), but a urinalysis at that time apparently revealed a high concentration of protein in the veteran's urine. R. at 71. The 1972 and 1973 VA examinations also noted that the veteran then suffered from back disabilities, including the residuals of a cervical spine fusion performed by a private physician in 1969 and chronic low-back strain. R. at 67–68. In a June 25, 1973, letter, a private neurologist, Dr. Lloyd A. Dayes, expressed a medical opinion that the veteran had incurred a kidney disorder during service. R. at 76.

In May 1984, the veteran filed a claim for service connection for a kidney disability. R. at 80–84. In September and October 1984 statements, the veteran and Mr. David Schwabauer, a former service colleague of the veteran's, stated that at their service separation examinations in December 1945 the veteran had provided a urine specimen for Mr. Schwabauer, who had been having difficulty producing one, and that both men's discharges were then delayed because of a problem with the specimens. R. at 90–91. The veteran further stated that in the 1960s he had been denied life insurance because of a kidney condition. R. at 88. In a November 19, 1984, decision, the VARO denied the claim. R. at 92. In an April 19, 1985, decision on appeal, the BVA denied service connection for the kidney disability. R. at 103–07.

On a January 1986 VA hospitalization report, the veteran was diagnosed with hypertensive heart disease, hypertensive nephropathy with renal insufficiency, and history of congestive heart failure. R. at 114–15. In February 1986, he submitted to the RO claims for service connection for a kidney disorder, congestive heart failure, hypertension, myalgia, and arthritis. R. at 120. The RO denied those claims in March 1986. R. at 121. In November 1986, the veteran submitted an additional statement from Mr. Schwabauer to the same effect as his prior statement. R. at 125. In March 1987, the veteran and his wife testified under oath at a hearing before the RO. R. at 127–33.

In April 1987, the RO disallowed the veteran's claims for service connection for "[r]enal insufficiency with hypertension" and for "myalgia, lower extremities (claimed rheumatism)". R. at 134–35. The RO stated that "SMRs in 4/42 [sic] revealed acute myalgia, marked, both thighs [and] legs, questionably rheumatic", but that "[n]o other treatment or complaints [were shown] during [the] rest of service or on [his] discharge exam". R. at 134. On May 19, 1987, the veteran filed with the RO a Notice of Disagreement (NOD) with the April 1987 disallowance of his claims. R. at 140. In September 1988, the veteran and his wife submitted additional sworn testimony. R. at 163–69.

On December 7, 1988, the veteran died due to "cardiopulmonary arrest" as a consequence of "chronic renal failure". R. at 172. On December 22, 1988, the appellant filed a claim for, inter alia, accrued benefits based on claims that her husband had been entitled at his death to an award of service connection for a kidney disorder, hypertension, myalgia, and arthritis. R. at 174. On August 2, 1989, the RO denied the accrued-

benefits claim. R. at 187. In a July 20, 1990, written "presentation" to the Board, the appellant's representative stated that "an appeal has been taken from a decision rendered by the [RO] in Los Angeles, California, which denied the issues [sic] in question". R. at 198.

On December 3, 1990, the BVA remanded the claim to the RO for correction of defects in the Supplemental Statement of the Case (SSOC) previously issued to the appellant. R. at 201. On remand, she submitted a statement, dated December 1986, from the veteran's brother that the veteran had had back and leg pain from arthritis at the time of his discharge from service and that in the 1950s he had experienced difficulty passing an insurance physical examination because of a kidney problem. R. at 212. The RO issued another decision disallowing the claim on December 19, 1990, and issued another SSOC on January 15, 1991. R. at 203–07. On January 30, 1991, the appellant filed with the RO a VA Form 1–9 (Appeal to BVA) expressing disagreement with the disallowance of her claim and stating that she was appealing a January 15, 1991, RO decision. R. at 208.

In the June 1991 decision here on appeal, the Board denied the appellant's claim. The Board concluded that no new and material evidence had been submitted since the 1985 BVA denial of the kidney claim, and, therefore, denied reopening of that claim. *Zevalkink*, BVA 91–19719, at 8–9. In denying the claim as to hypertension, the BVA noted that the first evidence of hypertension was a borderline diastolic blood pressure reading on an October 1972 VA examination and that there was no evidence to link hypertension with the veteran's active service. *Id.* at 9–10. In denying the claim as to arthritis and myalgia, the BVA stated that "the service medical records are negative for those disorders", and that a musculoskeletal disability was not shown until many years after the veteran's military service and not until after his 1963 accident. *Id.* at 10.

## II. Analysis

### A. The Court's Jurisdiction Over the Kidney–Disorder Claim

■ Although neither party has raised the issue, the Court must first determine wheth-

er it has jurisdiction over the appealed claim. *See Phillips v. General Services Admin.*, 924 F.2d 1577, 1579 (Fed. Cir.1991); *Fugere v. Derwinski*, 972 F.2d 331, 334 n. 5 (Fed. Cir.1992); *Noll v. Brown*, 5 Vet.App. 80, 82 (1993); *Hamilton v. Brown*, 4 Vet.App. 528, 541 (1993) (en banc). In order for this Court to have jurisdiction over a claim on appeal from an adverse BVA decision, a claimant or his or her representative must have filed with an RO a valid NOD with respect to that claim on or after November 18, 1988. Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) (VJRA § 402); *see Hamilton*, 4 Vet.App. at 531. Furthermore, *Hamilton* held: "There can be only one valid NOD as to a particular claim until a *final* RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant." *Hamilton*, 4 Vet.App. at 538. To be valid for any purpose, an NOD must be in writing and must be filed by the claimant or his or her representative within one year after "the date of mailing of notice of the result of initial review or determination". 38 U.S.C. § 7105(b)(1); *see Rowell v. Principi*, 4 Vet.App. 9, 15 (1993). A BVA remand decision "is in the nature of a preliminary order and does not constitute a final Board decision." 38 C.F.R. § 20.1100(b) (1993).

■ Here, the veteran filed an NOD in May 1987 as to the RO's disallowance of his claims for service connection for a kidney disorder, hypertension, myalgia, and arthritis. R. at 140. Those claims were pending on appeal to the BVA pursuant to that NOD at the time of the veteran's death in December 1988. Therefore, if the appellant's claim, filed on December 22, 1988, for accrued benefits predicated upon service connection for those four conditions was merely a continuation of the veteran's claims for service connection for those conditions, then the appellant could not have filed an additional valid NOD as to those claims, so as to give this Court jurisdiction over them, while they were in appellate status. If, however, the appellant's accrued-benefits claim is a claim different from the veteran's claims for service

connection that were pending on the date of his death, then the appellant would have been able to file a valid NOD as to that claim after November 18, 1988, and, hence, give this Court jurisdiction over that claim. For the reasons stated below, the Court holds that an accrued-benefits claim is a claim different from the service-connection claims of the veteran from whose service the former claim is derived, and, therefore, that the appellant here was required to file an NOD as to the accrued-benefits claim in order to initiate review by the BVA, and ultimately this Court, of that claim.

Pursuant to 38 U.S.C. § 5121(c), an application for accrued benefits must be filed "within one year after the date of [the veteran's] death". *See also* 38 C.F.R. § 3.1000(c) (1993). Although the appellant's claim for accrued benefits is related to the veteran's claims, during his lifetime, for service-connected disability benefits under 38 U.S.C. § 1110, entitlement to accrued benefits arises under 38 U.S.C. § 5121(a) and is predicated upon an accrued-benefits application filed *after* the veteran's death. *See Cates v. Brown,* 5 Vet.App. 399, 400 (1993). It would be anomalous to hold that a May 1987 NOD could apply to claims which could not have been filed prior to December 7, 1988.

The appellant's accrued-benefits claim was filed on December 22, 1988 (R. at 174), and was initially disallowed by the RO on August 2, 1989 (R. at 187). The July 20, 1990, written "presentation" to the Board from the appellant's representative (R. at 198) might constitute a valid NOD with respect to the August 2, 1989, RO decision disallowing the claim. However, that document indicates that the statements on it were transcribed "for subsequent presentation to ... the Board", and, hence, that document might not have been filed with the RO, as an NOD must generally be under section 7105(b)(1). *See also* 38 C.F.R. § 20.300 (1993). In any event, it is not necessary for the Court to determine whether that document could be a valid NOD because the January 30, 1991, VA Form 1–9 filed by the appellant with the RO (and date-stamped as received by the RO on February 5, 1991) satisfies the requirements for a valid NOD with respect to the Decem-

ber 19, 1990, RO decision disallowing her claim and is sufficient to give this Court jurisdiction over the claim. *See Malgapo v. Derwinski,* 1 Vet.App. 397, 398–99 (1991) (holding that VA Form 1–9 can be valid NOD); *Hamilton,* 4 Vet.App. at 538 (implicitly reaffirming *Malgapo* on this point as long as a prior NOD had not been filed as to the particular claim). The Court holds, therefore, that the appellant filed a valid NOD as to her accrued-benefits claim after November 18, 1988, and the Court, therefore, has jurisdiction over that claim under VJRA § 402.

### B. Merits of the Kidney–Disorder Claim

We must now determine whether, as the Board required, there must be new and material evidence in order for the appellant to pursue an accrued-benefits claim based on her deceased husband's claim which was pending at his death. We agree with the Board.

### 1. Nature of Accrued–Benefits Claim.

■ We start with the law on accrued benefits. Section 5121(a) of title 38, U.S.Code, provides, in pertinent part:

[P]eriodic monetary benefits ... under laws administered by the Secretary to which an individual was entitled at death under existing ratings or decisions, or those based on evidence in the file at date of death ... and due and unpaid for a period not to exceed one year, shall, upon the death of such individual be paid as follows:

.    .    .    .    .

(2) Upon the death of a veteran, to the living person first listed below:

(A) The veteran's spouse;

(B) The veteran's children (in equal shares);

(C) The veteran's dependent parents (in equal shares)....

38 U.S.C. § 5121(a)(2). As the ensuing analysis demonstrates, under this law, and the Secretary's regulations implementing it, 38 C.F.R. § 3.1000 (1993), the substance of the survivor's claim is purely derivative from any benefit to which the veteran might have been

"entitled" at his death. Basically, the survivor cannot receive any such attributed benefit that the veteran could not have received upon proper application therefor. What the law has given to the survivor is, basically, the right to stand in the shoes of the veteran and pursue his claim after his death. The only differences are that the law limits the survivor to one year's worth of those periodic monetary benefits to which the veteran was entitled at death and which were unpaid at the time of death and certain adjudication rules, discussed in part II.B.2, below, applicable to an accrued-benefits claim.

Under the appellant's theory, she could, as an accrued-benefits claimant, obtain accrued benefits even if there were absolutely no new evidence on the question of service connection since the 1985 final BVA decision denying the veteran's claim for service connection. Such a result would conflict with the thesis of the statute that the survivor's claim derives from the deceased veteran's claim.

The legislative history of section 5121 demonstrates that the accrued one-year benefit to be paid is actually the very one that, upon proper application therefor, would have been owed to the veteran at death; only the payee has been changed, and the amount is limited to one year's worth. Before the technical recodification of VA laws in title 38, U.S.Code, in 1958, Pub.L. 85–857, 72 Stat. 1105, 1228 (1958), the predecessor provision for section 3021 (the forerunner of the current section 5121(a)) provided expressly that "compensation" (and other listed benefits) due and unpaid at a veteran's death was to be paid to the designated survivors as "accrued benefits". Pub.L. No. 85–56, § 921(a), 71 Stat. 83, 121 (1957). The legislative history specified that the 1958 title 38 codification was "basically a restatement of existing law", effective January 1, 1959. 1958 U.S.C.C.A.N 4352, H.R.Rep. No. 85–1298, 85th Cong., 2d Sess. 2 (1958); 1958 U.S.C.C.A.N 4375, S.Rep. No. 85–2259, 85th Cong., 2d Sess. 1 (1958).

### 2. *Appellant's Fair–Process Arguments.*

■ We have considered the impressive arguments mounted by the appellant's counsel in his reply brief. His basic argument is

essentially the following: Even though the accrued-benefits claim is a derivative one, the survivor is nonetheless presenting that claim in his or her own right and was not a party to the prior claim by the veteran. Under the nonadversarial, informal nature of the VA claims-adjudication system, it should not be lightly assumed that a person not a party to a claim is bound by an adjudication of that claim. *See Walters v. National Assoc. of Radiation Survivors,* 473 U.S. 305, 333, 105 S.Ct. 3180, 3195–96, 87 L.Ed.2d 220 (1985) (VA claims "process ... is not designed to operate adversarially"); *Manio v. Derwinski,* 1 Vet.App. 140, 144 (1991); *Littke v. Derwinski,* 1 Vet.App. 90, 91 (1990). In *Thurber v. Brown,* 5 Vet.App. 119, 123 (1993), the Court stated: "The entire thrust of the VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process." *Thurber* then laid out a sequence of VA adjudication procedures designed to afford such notice and hearing rights to VA claimants.

■ In this case, the appellant was entitled to none of these protections during her husband's lifetime in connection with *his* unsuccessful claim for service connection of his kidney disorder. She clearly was not afforded by VA either notice or the opportunity to be heard in connection with the process initiated in May 1984 by her husband and culminating in the Board's April 1985 adverse decision. Nor should she have been, since the applicable law and regulations do not require that such notice and opportunity be afforded to other than the benefits claimant and his or her representative. *See, e.g.,* 38 U.S.C. §§ 5104(a), 7105(b)(1), 7104(e), 7266; 38 C.F.R. §§ 3.103(a), (b), (f), 19.8, 19.25 (1993); *see also Hamilton,* 4 Vet.App. at 531, 534; *Rowell,* 4 Vet.App. at 14–15; *Ashley v. Derwinski,* 2 Vet.App. 307, 308 (1992); *Ashley v. Derwinski,* 2 Vet.App. 62, 64 (1992).

■ Finally, the appellant contends that the law is silent about imposing any evidentiary requirement on an accrued-benefits claimant other than the "evidence in [or deemed to be in] the file at date of death" requirement, *see Hayes (Mildred) v. Brown,* 4 Vet.App. 353, 360–61 (1993), and that to

infer one under the circumstances would work a real and unintended hardship on such a claimant. This argument is not without facial appeal since section 5121 provides the following alternative description of an accrued benefit: "monetary benefits ... based on evidence in the file at date of death". Read in isolation, these words could be interpreted to mean "based on *all* evidence in the file (including old evidence)". Or, they could be read as meaning "based on *otherwise-permissible* evidence in the file". We believe that the latter reading is the one that accords meaning to all parts of the statute and construes "each part or section ... in connection with every other part or section so as to produce a harmonious whole." 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed.1992) (quoted in *Sweitzer v. Brown*, 5 Vet.App. 503, 505 (1993); *Mays v. Brown*, 5 Vet.App. 302, 306 (1993); *Suttmann v. Brown*, 5 Vet.App. 127, 135 (1993); *In re Fee Agreement of Smith*, 4 Vet.App. 487, 493 (1993); *Lorenzano v. Brown*, 4 Vet. App. 446, 449 (1993); *Leopoldo v. Brown*, 4 Vet.App. 216 (1993); *Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992)). In view of the basically derivative nature of the accrued-benefits claimant's rights and the importance of the finality/reopening provisions of 38 U.S.C. §§ 7104(b), 7105(c), and 5108 in the VA claims adjudication process, *see generally Russell v. Principi*, 3 Vet.App. 310, 312 (1992) (en banc), we hold that section 5121(a) must be read in such a way as to harmonize with those provisions. Otherwise, we might agree with the appellant that it is fundamentally unfair for the Secretary to be seeking to bind this appellant to the results of the initial administrative Board determination to which she was not a party, of which she received no notice, in which she had no statutory or regulatory right to intervene in order to protect any interests she might have had in its outcome, and as to which no judicial review was available at the time. *See Blonder-Tongue Laboratories v. University Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed. Cir.1983); *Nasem v. Brown*, 595 F.2d 801, 806 (D.C.Cir.1979); *cf. Gardner v. Brown*, 5 F.3d 1456, 1463–64 (Fed. Cir.1993)

("vigorous review" of pre-judicial-review VA regulations, and not deference to agency interpretation, is appropriate), *cert. granted*, —— U.S. ——, 114 S.Ct. 1396, 128 L.Ed.2d 69 (1994).

Accordingly, we hold that Congress intended and provided for exactly that result and that there is no unfairness to accrued beneficiaries when the basically derivative nature of their rights is fully understood in the context discussed in part II.B.1., above. The appellant has been given her *own* dependency and indemnity compensation and other (such as burial) death benefits, and her arguments about collateral estoppel and issue preclusion would have greater resonance as to those benefits.

▮ Indeed, as to such benefits, VA regulations provide as follows:

> Except with respect to benefits under the provisions of 38 U.S.C. [§] 1318 [non-service-connected benefits for survivors of veterans rated totally disabled by service-connected disabilities at time of death] and certain cases involving individuals whose [VA] benefits have been forfeited for treason or for subversive activities under the provisions of 38 U.S.C. [§§] 6104 and 6105, *issues involved in a survivor's claim for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime.*

38 C.F.R. § 20.1106 (1993) (found at § 19.196 until 1992) (emphasis added); *see also* 45 Fed.Reg. 56,093–094 (1980) (explanation of predecessor regulation § 19.196 as allowing "the Board to *review 'de novo' service connection cause of death cases* notwithstanding the fact that a final appellate decision had been rendered during the veteran's lifetime" (emphasis added)). The Secretary contends that the term "death benefits" in the regulation "appears to refer to death compensation, [DIC], or a death pension, which are continuing, periodic benefits awarded following a veteran's death based on the beneficiary's status as the veteran's survivor[, and not to] ... accrued benefits [which are] monetary sums owing to the veteran, but unpaid at the time of death." Resp. at 7. The Secretary's interpretation is not unreasonable. *See Mar-*

*tin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 150, 111 S.Ct. 1171, 1175, 113 L.Ed.2d 117 (1991) ("it is well established that an agency's interpretation of its own regulation is entitled to substantial deference"). Although the appellant contends that "death benefits" in this regulation should be construed as also referring to an accrued-benefits claim, such an interpretation would be fundamentally at odds with the derivative-benefits analysis set forth in part II.B.1., above. Indeed, such an analysis implicates federal case law under which a successor whose interests are derivative from the rights of another party is bound by the determination of the first party's rights. *See, e.g., Terrell v. DeConna,* 877 F.2d 1267, 1270–72 (5th Cir.1989); *Roy v. Jasper,* 666 F.2d 714, 717–18 (1st Cir.1981); *cf.* RESTATEMENT (SECOND) OF JUDGMENTS § 48(2) (1982).

Nor can the drafting (which the Secretary terms "imprecise", Resp. at 8) of another VA regulation (38 C.F.R. § 3.152 (1993)) entitled "Claims for death benefits", which discusses "accrued benefits" as being part of a claim for "death benefits", even if it carried the implication asserted by the appellant (as to which the Court is dubious) that accrued benefits are themselves death benefits, change the plain meaning of the statute. Moreover, another VA regulation provides in a way fully consistent with that plain meaning:

> When an appeal is pending before the Board of Veterans' Appeals at the time of the appellant's death, the Board may complete its action on the issues properly before it without an application from the survivors.

38 C.F.R. § 20.1302 (1993).

### 3. Reopened Claim.

■ For all of the above reasons, the Court now holds that a survivor's accrued-benefits claim asserting that the veteran's disorder was service connected necessarily incorporates any prior adjudications of the service-connection issue in claims brought by the veteran, because the accrued-benefits claim derives from the veteran's service-connection claim. Accordingly, the Board must generally adjudicate the appellant's accrued-

benefits claim pursuant to the statutory provisions governing a reopened claim. Analysis of those provisions yields the conclusion that there must be new and material evidence before the accrued-benefits claim may be considered, just as would have been the case if the veteran had himself been representing the compensation claim.

The Board concluded that no "new and material" evidence had been submitted since the April 1985 BVA decision disallowing the veteran's claim for service connection for a kidney disorder, and it thus declined to adjudicate on the merits the appellant's claim for accrued benefits for the veteran's kidney disorder. The finality attributes of prior BVA decisions are established in 38 U.S.C. § 7104(b), which provides: "Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." *See generally Russell, supra.* The referenced exception in 38 U.S.C. § 5108 provides: "If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim."

■ In the instant case under 38 U.S.C. § 5121(a), the appellant is entitled to accrued benefits based upon the veteran's kidney condition only if it is determined that the veteran was entitled, based on the evidence in the file at the date of his death, to service connection for that condition. *Cf. Hayes, supra* (certain evidence submitted after veteran's death may be deemed to have been in the file at the date of death). The appellant's entitlement to accrued benefits is thus predicated upon her establishment of the exact facts which the veteran was required to establish, prior to his death, on his claim for service connection for the kidney condition. Therefore, just as the veteran was required to submit new and material evidence in order to obtain reopening and readjudication of his kidney claim during his lifetime, so there must be new and material evidence in order for the accrued-benefits claimant to obtain full adjudication of the accrued-benefits claim

based upon "the same factual basis" as the veteran's denied service-connection claim. A similar result could obtain under 38 U.S.C. § 7105(c) and 38 C.F.R. §§ 3.104(a) and 3.105(a) (1993), even though the pertinent prior final denial occurred in an unappealed RO decision rather than a BVA decision. *Cf. Suttmann,* 5 Vet.App. at 135–36. Hence, the appellant may receive a merits adjudication of her accrued-benefits claim based on the veteran's kidney disorder claim only if there is new and material evidence, as described below, since the time of the BVA's April 1985 denial of the veteran's service-connection claim based on that disorder.

### 4. *New and Material Evidence.*

■ Where new and material evidence is required before a claim may be fully adjudicated, the Board must conduct a "two-step" analysis. *Manio,* 1 Vet.App. at 145. First, it must determine whether the evidence presented or secured since the pertinent prior final disallowance is "new and material". If it is, the Board must then adjudicate the claim on the basis of all the evidence, both new and old. *See Jones (Mc-Arthur) v. Derwinski,* 1 Vet.App. 210, 215 (1991). The determination as to whether evidence is "new and material" is a question of law subject to de novo review by this Court under 38 U.S.C. § 7261(a)(1). *See Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992); *Jones,* 1 Vet.App. at 213; *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). The Court recently synthesized the applicable law as follows:

> "New" evidence is that which is not merely cumulative of other evidence of record. "Material" evidence is that which is relevant to and probative of the issue at hand and which, as this Court stated in *Colvin, supra,* . . . must be of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Cox v. Brown,* 5 Vet.App. 95, 98 (1993).

■ In addition, when the reopening is sought as part of an accrued-benefits claim under 38 U.S.C. § 5121(a), the new and ma-terial evidence must have been in the veteran's file at time of death or be deemed to have been so under *Hayes, supra.*

■ In the instant case, the Court concludes that there was no such new and material evidence since the time of the BVA's prior final disallowance in April 1985 of the veteran's kidney-disorder claim, and that, therefore, the Board was correct in not proceeding to the section 5108 step-two full adjudication of the accrued-benefits claim derived from the veteran's claim. The evidence of record since the 1985 BVA denial consists of the following: (1) reports of the veteran's medical treatment by VA and private physicians in 1986 (R. at 114–18, 120) and the report of his final hospitalization and death in 1988 at a VA facility (R. at 180–81); (2) photocopies of SMRs previously considered by the BVA in 1985 (R. at 136–37, 142–43); (3) the sworn testimony of the veteran and his wife (R. at 126–33, 163–69); (4) lay statements from the veteran, his wife, and David Schwabauer (R. at 125, 141, 154, 201–11); and (5) a lay statement, dated December 1986, from the veteran's brother (R. at 212). The item (1) records are not "material" because they pertain only to treatment of the veteran many years after separation and do not relate his then-current condition to his service. The items (2), (3), and (4) materials are not "new" because they are merely cumulative of records and statements previously considered by the BVA in 1985. The item (5) brother's statement that the veteran had experienced difficulty passing an insurance physical in the 1950s (R. at 212) may not be considered as part of the appellant's accrued-benefits claim to reopen the veteran's denied service connection claims because, as far as can be determined from the record on appeal, that statement was not evidence in the veteran's file at the date of his death (or evidence that fits within *Hayes, supra* ). In any event, that statement, while not completely cumulative of the veteran's September 1984 statement that he had been denied life insurance in the *1960s* because of his kidney disorder, is not "material" because it does not indicate that the kidney disorder or symptomatology was present in service or

within an applicable presumption period or is otherwise service related.

Therefore, because there was no new and material evidence so as to require full adjudication of the accrued-benefits kidney-disorder claim under 38 U.S.C. §§ 5108 and 7104(b), the Court will affirm the Board's denial of that claim.

### C. Hypertension Claim

■ In denying the claim for accrued benefits based on the veteran's hypertension, the Board concluded that the veteran's blood-pressure readings had been normal during service and upon private medical examination in 1965; that the earliest findings possibly indicating hypertension had been elevated diastolic blood-pressure readings on VA examinations in 1972 and 1973; and that hypertension had first been diagnosed by a VA physician in 1984. *Zevalkink,* BVA 91–19719, at 9–10. The Board thus concluded that there was no evidence that the veteran had had hypertension during service or within an applicable presumption period.

■ The Court reviews BVA fact findings under a "clearly erroneous" standard. 38 U.S.C. § 7261(a)(4); *see Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). Pursuant to that standard, "[I]f there is a 'plausible' basis in the record for the factual determinations of the BVA, . . . we cannot overturn them." *Gilbert, supra.* In the instant case, the Board's findings that there is no evidence linking the veteran's hypertension to service is supported by a plausible basis in the record and is thus not clearly erroneous. The Court will, therefore, affirm the BVA decision denying the accrued-benefits claim as to hypertension.

### D. Myalgia and Arthritis Claims

■ Although the Board's decision listed the myalgia and arthritis claims as separate claims, the Board discussed those issues in combination and treated those claims as essentially intertwined. *Zevalkink,* BVA 91–19719, at 10–11. ("Myalgia" is "muscle pain"; arthritis is "articular rheumatism" or "inflammation of a joint"; "rheumatoid arthritis" is "a thickening of articular

soft tissue"; "rheumatism" is an "[i]ndefinite term applied to various conditions with pain or other symptoms which are of articular origin or related to other elements of the musculoskeletal system". Stedman's Medical Dictionary 134–35, 1009, 1358 (25th ed. 1990).) The record on appeal indicates that VA has treated those claims as intertwined throughout the course of its adjudications. *See* R. at 134, 187. Accordingly, the Court will treat these claims as intertwined for purposes of review in the instant appeal. *See Harris v. Derwinski,* 1 Vet.App. 180, 183 (1991). In light of the apparent SMR from April 1944 stating "myalgia, marked, . . . both thighs and legs" (R. at 136, 209; *see also* R. at 134), the Board apparently erred in stating that the SMRs "are negative for" "rheumatoid arthritis and myalgia", *Zevalkink,* BVA 91–19719, at 10. Because the record contains no evidence of recurrence of such a condition, either at separation (*see* R. at 22) or at any time thereafter, *see Rabideau v. Derwinski,* 2 Vet.App. 141, 143 (1992) (in order for service connection to be awarded there must be evidence of "a present disability which is attributable to" service); 38 C.F.R. § 3.303(b) (1993) (chronicity requires either diagnosis of chronic condition in service or continuity of symptomatology thereafter); *Sanchez v. Derwinski,* 2 Vet. App. 330, 333 (1992), however, any such error by the Board was not prejudicial to the appellant. *See* 38 U.S.C.A. § 7261(b); *Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992); *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991).

### III. Conclusion

Upon consideration of the record and the pleadings of the parties, the Court denies the Secretary's motion for summary affirmance. The Court affirms the June 10, 1991, BVA decision.

AFFIRMED.