# United States Court of Appeals for the Federal Circuit

05-7057

DEBORAH J. JACKSON,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

Hillary A. Stern, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, and Bryant G. Snee, Assistant Director. Of counsel on the brief were Richard J. Hipolit, Assistant General Counsel, and Joshua S. Blume, Attorney, United States Department of Veterans Affairs, of Washington, DC. Of counsel were Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, and Y. Ken Lee, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Chief Judge William P. Greene, Jr.

# United States Court of Appeals for the Federal Circuit

05-7057

DEBORAH J. JACKSON,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  December 30, 2005

_____

Before MICHEL, Chief Judge, LOURIE and LINN, Circuit Judges.

LOURIE, Circuit Judge.

Deborah J. Jackson ("Jackson") appeals from the decision of the United States Court of Appeals for Veterans Claims (the "Veterans Court") affirming the Board of Veterans' Appeals (the "Board") denial of her claim for benefits. Jackson v. Principi, No. 01-1965 (Vet. App. Aug. 10, 2004). Because the Veterans Court erred in its interpretation of 38 U.S.C. § 1151, we reverse.

## BACKGROUND

Jackson served in the United States Air Force from July 1974 to November 1978. In February 1993, she was hospitalized at a VA medical center for physical therapy and treatment for chronic pain. While admitted, she was verbally and physically assaulted twice by a male patient. In August 1995, Jackson filed a claim at the VA Regional Office ("RO") for service-connected

benefits for post-traumatic stress disorder ("PTSD") caused by the assaults. In September 1996, the RO denied her claim, determining that there were no in-service PTSD stressors. In November 1996, Jackson sent a notice of disagreement to the RO, clarifying that her claim was based on 38 U.S.C. § 1151, which allows for compensation to a veteran for an injury that occurs "as the result of hospitalization." In October 1997, the RO issued a supplemental statement concluding that Jackson was not entitled to compensation under § 1151 because there was no medical evidence that the assault aggravated her preexisting PTSD.

Jackson appealed to the Board, which denied her claim for compensation under § 1151 as a matter of law. The Board relied on precedent purportedly establishing that § 1151 authorizes compensation for a disability resulting from medical treatment or examination itself, but not for a disability from an intervening cause such as a sexual assault. According to the Board, because Jackson's PTSD resulted from an assault by another patient, which was an intervening cause during hospitalization, not from treatment or examination rendered by the VA, her claim did not fall within the statute. Jackson appealed from the Board's decision, arguing that the Board misinterpreted § 1151. However, the Veterans Court held that the Board did not commit legal error in determining that Jackson's PTSD was not the result of any VA action. The Veterans Court relied on its precedent, <u>Sweitzer v. Brown</u>, which held that the injury must have resulted from actions by VA, not from "disabilities that are merely coincidental with the receipt of VA treatment." 5 Vet. App. 503, 506 (1996). The Veterans Court reasoned

that the claimed PTSD was not the result of any treatment furnished by the VA and therefore Jackson was not entitled to compensation under § 1151.

Jackson timely appealed, and we have jurisdiction pursuant to 38 U.S.C. § 7292(a).

DISCUSSION

The scope of our review of a Veterans Court's decision is limited by statute. 38 U.S.C. § 7292. Under § 7292(d), we "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1) (2002). This court reviews the Veterans Court's interpretation of 38 U.S.C. § 1151 de novo. Gardner v. Brown, 5 F.3d 1456, 1458 (Fed. Cir. 1993). However, "[e]xcept to the extent that an appeal under this chapter presents a constitutional issue, the Court of Appeals may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2).

The key phrase in the interpretation of the statute here is "as the result of hospitalization." The statute in effect at the time Jackson's injuries occurred, 38 U.S.C. § 1151, provided for compensation to veterans who were injured by VA hospitalization or medical treatment.[1] It stated in pertinent part:

> Where any veteran shall have <u>suffered an injury, or an aggravation of an injury, as the result of hospitalization</u>, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation . . ., awarded under any laws administered by the Secretary, or as a result of having submitted to an examination under any such law, and not the result of such veteran's

---

[1] Section § 1151 was amended while Jackson's claim was pending before the agency. Because her claim was filed before October 1, 1997, the effective date of the amendment, the pre-amendment language controls.

own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter . . . shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.

38 U.S.C. § 1151 (1994) (emphasis added).

On appeal, Jackson asserts that the Veterans Court misinterpreted the word "hospitalization" in § 1151 as being limited to instances of direct interaction with VA personnel, instead of including all events occurring during the veteran's stay at the VA facility. According to Jackson, the Veterans Court found that "actions by VA" are a prerequisite for § 1151 compensation, but there is no support in the statute for that limitation. Moreover, Jackson contends that the Supreme Court in Brown v. Gardner, 513 U.S. 115 (1994), established that the language "as the result of" means that there must have been a causal connection between the "injury" and "hospitalization," not that there must have been VA action. Id. at 119. Jackson asserts that the causal connection is established here because she would not have been injured if it were not for her "hospitalization."

The Secretary of Veterans Affairs (the "Secretary") responds that the Veterans Court's decision was not based on the interpretation of the word "hospitalization," but rather on the phrase "as the result of hospitalization." Furthermore, the Secretary argues that the phrase "as the result of" requires a "causal connection," and that the Court in Brown v. Gardner implied that there must be some form of VA action in order for compensation to be awarded under § 1151. 513 U.S. at 119 n.3. According to the Secretary, the legislative history of § 1151 supports an interpretation that the VA must act in some manner to cause an injury. The Secretary also asserts that the phrase "as the result of"

cannot have the same meaning as "during," and that Jackson's interpretation of § 1151 would provide compensation to any victim injured at a VA hospital, rather than only to those victims whose injuries were caused by VA actions in the course of providing hospitalization. Lastly, the Secretary asserts that the assault occurred coincident with VA hospitalization and did not result from or was not caused by the VA hospitalization itself. Rather, according to the Secretary, the assault was an intervening cause of Jackson's disability, taking it outside the compass of the statute.

We agree with Jackson that the phrase "as the result of hospitalization," which was the language in § 1151 at the time of Jackson's injuries, does not require that the injuries have been caused by actions of the VA. This court and the Supreme Court have had occasion to consider the language of § 1151 previously. See Gardner v. Brown, 5 F.3d 1456 (Fed. Cir. 1993), aff'd, Brown v. Gardner, 513 U.S. 115 (1994). In Gardner v. Brown, we determined that VA fault or negligence is not required for entitlement to compensation under § 1151. 5 F.3d at 1456. Furthermore, we stated that the phrase "as the result of" "mandates only a causation requirement." 5 F.3d at 1459. We noted that under § 1151, the requirements for compensation are only that the specified treatment "must cause the injury or the aggravation of injury. And willful misconduct of the veteran may not be a cause of the injury or aggravation." Id. The Supreme Court agreed, stating that the phrase "as the result of" is "read simply to impose the requirement of a causal connection between the 'injury'. . . and 'hospitalization'" and does not incorporate a fault requirement. Brown v. Gardner, 513 U.S. at

05-7057                                     5

119. Therefore, in order to recover under § 1151, the word "result" only implies a causal connection, not fault, although the injury cannot result from the veteran's own willful misconduct.

The question whether there was or was not fault is not at issue in this case; the issue is whose fault, or which cause was involved. We conclude that the fact that a causal connection is required for compensation does not mean that the cause must be VA personnel. The statute does not contain that limitation. The word "hospitalization" is a term of status; one is hospitalized when one is in the hospital. And an injury is caused as a result of hospitalization when it occurs when one is in the hospital.

The remainder of the statutory language of § 1151 also aids our understanding of the definition of the word "hospitalization." The statute allows for compensation for injuries resulting from "hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation." Whereas medical and surgical treatment involve direct involvement with VA staff, hospitalization need not be related to any treatment, but rather is related to the circumstance of being hospitalized. If Congress had intended the word "hospitalization" to be limited to actions of the VA, it would be partially redundant, as most hospital injuries are incurred through VA medical or surgical treatment. The word "hospitalization" thus must mean something more than actions of the VA. Because the statute specifically distinguishes between situations that involve medical treatment and those that do not, and it allows for recovery under

both situations, we cannot limit the word "hospitalization" to only those conditions that involve medical treatment by the VA.

The history of this statute also suggests that the word "hospitalization" must be afforded a broader meaning than merely acts by the VA. Congress amended the statute in 1997 and changed the word "hospitalization" to "hospital care." It can be reasonably inferred from this amendment that Congress understood the earlier statute to mean something more than hospital care when it used the term "hospitalization." The term "hospital care" implies the provision of care by the hospital specifically, as opposed to the broader, more general experience of a patient during the course of hospitalization. The word "hospitalization," therefore, cannot be limited only to treatment or examination rendered by the VA, as suggested by the Board, but instead encompasses events that occur during a stay at a hospital.

The Board's decision, which the Veterans Court affirmed, focuses on the concept of an "intervening cause" and states that there can be no compensation under the statute where the disability is due "to such intervening causes as a sexual assault or another intentional tort." The Board rejected Jackson's claim because it deemed the assault to be an intervening cause, which precluded VA liability. The Secretary argues the same point.

We disagree that an "intervening cause" takes the injury out of the scope of protection afforded under § 1151. An "intervening cause" does not preclude liability where there exists a causal connection between the hospitalization and the injury. The statute uses broad language and allows for compensation any

time there has been an injury that results from "hospitalization." The fact that an intervening cause may mean that the injury was not the result of VA action does not mean that it was not "as the result of hospitalization." The injury here would not have occurred if there had not been hospitalization; it was therefore a result of the hospitalization. It is true that common law courts may have held that an intervening act precludes liability in certain tort situations. See, e.g., Edwards v. Tardif, 692 A.2d 1266 (Conn. 1997) (noting that suicide constitutes an independent intervening cause precluding liability in a tort claim); Looney v. Davis, 721 So. 2d 152 (Ala. 1998) (stating that a superseding intervening cause may break the chain of causation). However, we are interpreting a statute here, and it is not for us to legislate beyond the plain meaning of the statute.

The Board and the Veterans Court cited Sweitzer to support their conclusion that § 1151 does not cover injuries involving intervening causes, or injuries that are not the result of VA action. We are not of course bound by decisions of the Veterans Court. Moreover, we do not believe that Sweitzer is analogous to this case or provides the necessary support for the Veterans Court's determination that Jackson's injury did not result from her hospitalization. In Sweitzer, a veteran checked into a VA medical center and left the clinic area. 5 Vet. App. at 504. While reading an advertisement on a bulletin board at the intersection of two corridors, a patient in a motorized wheelchair turned a corner and struck the veteran, injuring him. Id. The statutory phrase at issue under § 1151 in that case was "having submitted to an examination." The Veterans Court determined that because the injury did not result from the examination

itself, but rather from an incident that occurred before the process of reporting for the examination, the injury did not result from "having submitted to an examination." Id. at 505. The court then reasoned that the "statute does not address disabilities that are merely coincidental with the receipt of VA treatment," implying that being struck while reading an advertisement is merely coincidental to an examination. Id. Sweitzer did not look at the phrase "as the result of" in terms of causation, but rather focused on whether the particular facts demonstrated that the injury occurred after or before the patient had "submitted to an examination." That is not the case here, where it is undisputed that the injury occurred during "hospitalization." Sweitzer is therefore not decisive of this appeal.

The Secretary argues that the Supreme Court in Brown v. Gardner implied that some kind of VA action must have been the cause of any injury to entitle a veteran to compensation, citing a footnote stating, "VA action is not the cause of the disability in [incidents of a disease's or injury's natural progression, occurring after the date of treatment] situations." 513 U.S. at 119 n.3. We do not interpret that footnote as shedding light on the issue before us, as that case dealt with whether the statute required fault by the VA, and the point of the footnote related to remote consequences of an injury. This case does not raise the issue of whether fault by VA was required under the statute.

## CONCLUSION

In sum, because the Veterans Court failed to give the phrase "as the result of hospitalization" its full meaning to include all injuries occurring as a result of

the veteran being hospitalized, we reverse the Veterans Court's conclusion of no liability and remand the case for further proceedings consistent with this opinion.

<u>REVERSED</u>.
