# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-885

Herman L. Loving, Jr., Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued January 13, 2005                    Decided   March 29, 2005  )

*Donald E. Purcell*, of Washington, D.C., for the appellant.

*John D. McNamee* with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel*, Acting Deputy Assistant General Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before IVERS, *Chief Judge*, and STEINBERG and HAGEL, *Judges*.

HAGEL, *Judge*:  Herman L. Loving, Jr., appeals through counsel an April 3, 2002, Board of Veterans' Appeals (Board) decision wherein the Board denied him entitlement to compensation under 38 U.S.C. § 1151 for a right-knee disability alleged to have resulted from VA medical treatment in July 1999.  Record (R.) at 2, 9.  The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review the April 2002 Board decision.  For the reasons provided in this opinion, the Court will affirm the April 2002 decision.

## I. BACKGROUND

Mr. Loving served on active duty in the U.S. Army from October 1966 to October 1968. R. at 13.  On July 19, 1999, he reported for outpatient treatment at a VA clinic for a "general follow up" to previous medical treatment.  R. 83, 91.  In the report from that examination, Dr. Richard D. Krause recorded that "a metal ceiling grate or panel" had fallen on Mr. Loving as he was being

examined; Dr. Krause did not note what had caused the ceiling grate to fall.  *Id*.  Mr. Loving later testified that during that VA examination he and the doctor had "heard three loud boom[s]" and that "the third boom shook the building" causing the ceiling grate to fall on his knee.  R. at 153.

In a statement in support of claim received by VA in February 2000, Mr. Loving informed VA of his desire to file a claim for an injury that he "sustained while being seen at [a VA outpatient clinic]."  R. at 19.  Specifically, he asserted that he "was hit in the leg when a vent grate fell out of the ceiling."  *Id.*  VA medical records dated between October 1999 and September 2000 reflect that Mr. Loving complained of pain in his right knee.  *See, e.g.*, R. at 74, 109.

In May 2000, a VA regional office denied Mr. Loving's claim.  R. at 96.  Mr. Loving filed a Notice of Disagreement with respect to that decision.  R. at 103.  After the regional office issued a Statement of the Case, Mr. Loving appealed the May 2000 regional office decision to the Board.  R. at 145.

The Board, in the April 2002 decision on appeal, denied compensation under 38 U.S.C. § 1151 for Mr. Loving's injuries resulting from the July 1999 incident.  R. at 2, 9.  In so doing, the Board concluded that Mr. Loving's injury "was not caused by VA hospital care, medical or surgical treatment, or examination, but rather by an intervening cause, i.e., the falling ceiling grate" and that "[t]here is no evidence to suggest that the falling grate was in any way associated with the actual provision of outpatient medical care and examination at the VA facility."  R. at 5-6.  With respect to the Secretary's duty to assist, the Board concluded that the regional office had "secured the relevant VA medical records" and that, "[a]lthough it is possible that some VA medical records are outstanding, the Board finds that failing to obtain such evidence is not prejudicial."  R. at 3.  The Board based that conclusion on its determination that "the disposition of the claim is based on the legal requirements for entitlement, rather than evidence concerning the nature or severity of the disability."  R. at 3-4.

On appeal, Mr. Loving raises three arguments.  First, he argues that the "Board's admission that '[a]lthough it is possible that some VA medical records are outstanding, the Board finds that failing to obtain such evidence is not prejudicial to the veteran,' constitutes a failure of the duty to assist [him] in obtaining evidence necessary to substantiate his claim."  Appellant's Brief (Br.) at 12 (quoting R. at 3).  Second, he argues that a VA Adjudication Procedure Manual (M-21-1)

2

"instruction that adjudicators not request quality-assurance records" should be invalidated because it contravenes 38 U.S.C. § 5103A. *Id.* at 10; *see id.* at 12-17. Finally, he argues that the Board erred insofar as it failed to make a finding as to whether the event in question was reasonably foreseeable, as, he contends, is required by 38 U.S.C. § 1151(a)(1)(B). *Id.* at 17-18. He asks that the Court vacate the decision on appeal and remand the matter for readjudication. *Id.* at 18-19.

In his brief, the Secretary, citing to *Sweitzer v. Brown,* 5 Vet.App. 503 (1993), counters that "the conclusion is inescapable that Mr. Loving's claim . . . is improvident under the law." Secretary's Br. at 7. Responding to Mr. Loving's first argument, the Secretary contends that the facts in this case are not in dispute and that the law is dispositive of Mr. Loving's claim. *Id.* at 8. With respect to Mr. Loving's argument regarding VA's quality-assurance records, the Secretary contends that Mr. Loving "attempts to bring matters such as building safety into the purview of [section] 1151." *Id.* Responding to Mr. Loving's final argument, the Secretary contends that that argument is "inapposite" because section 1151 "encompasses only events arising from the treatment itself [and] not from events that are not related to treatment." *Id.* at 9. He asks that the Court affirm the decision on appeal. *Id.* at 10.

## II. ANALYSIS

### A. Compensation under 38 U.S.C. § 1151

Section 1151(a) of title 38, United States Code, provides in relevant part:

Compensation under this chapter [chapter 11] . . . shall be awarded for a qualifying additional disability or a qualifying death of a veteran in the same manner as if such additional disability or death were service[]connected. For purposes of this section, a disability or death is a qualifying additional disability or qualifying death if the disability or death was not the result of the veteran's willful misconduct **and**–

(1) the disability or death was **caused by hospital care, medical or surgical treatment, or examination** furnished the veteran under any law administered by the Secretary, either by a Department employee or in a Department facility as defined in section 1701(3)(A) of this title, and the proximate cause of the disability or death was–

(A) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the Department

3

in furnishing the hospital care, medical or surgical treatment, or examination; or
(B) an event not reasonably foreseeable.

38 U.S.C. § 1151(a) (emphasis added).

With respect to Mr. Loving's argument that the Board decision on appeal should be vacated and the matter remanded because the Board erred insofar as it failed to make a finding as to whether the event in question was reasonably foreseeable, as is required by 38 U.S.C. § 1151(a)(1)(B) (Appellant's Br. at 17-18), we note that 38 U.S.C. § 1151(a)(1)(B) does not require that a finding be made in every case regarding whether the event in question was reasonably foreseeable. Rather, the statute provides that such a finding is necessary only if and when it is first determined, under section 1151(a)(1), that the additional disability at issue was "***caused by [VA] hospital care, medical or surgical treatment, or examination***." In the instant case, because the Board found that Mr. Loving's additional disability was not so caused, the Board was not required to make a finding as to whether the event in question was reasonably foreseeable.

We will now address whether the Board erred in concluding that Mr. Loving's additional disability was not "caused" by the VA examination. In *Sweitzer*, the Court denied benefits, under 38 U.S.C. § 1151, to an appellant who, while waiting to undergo a VA examination in a VA hospital, was injured when he was struck by a patient in a motorized wheelchair. *See* 5 Vet.App. at 506. The Court there concluded that section 1151 "does not address disabilities that are merely coincidental with the receipt of VA treatment." *Id.* at 505. The Court, in addressing a dissenting judge's argument that the appellant was "within the 'control and authority of . . . VA,'" that VA had a "'duty to insure his safety,'" and that "[t]he reality is that the appellant would not have sustained an injury unless he had reported for the VA medical examination," concluded that "[s]uch notions, which do have hallowed status in the halls of tort law in general . . . , are not relevant . . . where the issue is the construction of a statute according veterans benefits." *Id.* at 506. The Court proceeded to observe that the appellant "might well have raised such legal theories in a suit against the United States under the Federal Tort Claims Act, 28 U.S.C.[] §§ 1346(b), 2672-2680, but that [that wa]s not the matter before [the Court]." *Sweitzer*, 5 Vet.App. at 506-07.

The facts in the instant case differ from those in *Sweitzer* insofar as, in this case, Mr. Loving's injury was sustained during the course of a VA examination. In our view, however, that amounts

4

to a distinction without a difference because, although Mr. Loving sustained an injury during the course of a VA examination, that injury was coincidental to the examination and was not, based upon the evidence of record, *caused by* it.

Section 1151 requires proof of causation in fact; that is, in order to be compensable under section 1151, a veteran's additional disability must have actually been caused by hospital care, medical or surgical treatment, or medical examination furnished by a VA employee or in a VA facility. The Secretary has implemented section 1151 in part by the following regulations, applicable to section 1151 claims received on or after October 1, 1997, in 38 C.F.R. § 3.361:

> (c) *Establishing the cause of additional disability or death.* Claims based on additional disability or death due to hospital care, medical or surgical treatment, or examination must meet the causation requirements of this paragraph and paragraph (d)(1) or (d)(2) of this section. . . .
> (1) *Actual causation required.* To establish causation, the evidence must show that the hospital care, medical or surgical treatment, or examination resulted in the veteran's additional disability or death. *Merely showing that a veteran received care, treatment, or examination and that the veteran has an additional disability or died does not establish cause*.
> . . . .
> (d) *Establishing the proximate cause of additional disability or death.* The proximate cause of disability or death is the action or event that *directly caused the disability or death, as distinguished from a remote contributing cause*.

69 Fed. Reg. 46,426, 46,433 (2004) (emphasis added) (to be codified at 38 C.F.R. § 3.361(c)(1), (d)). The United States Court of Appeals for the Federal Circuit has construed the words "caused by" in the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-s, et seq., so as to require the existence of "a logical sequence of cause and effect showing that the vaccination was the reason for the injury." *Grant v. Sec'y of the Dep't of Health and Human Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1994) (interpreting the term "caused by" as contained in 42 U.S.C. § 300aa-11(c)(1)(C)(ii)). In the context of section 1151, this would mean finding that the conduct of the VA examination was the reason for the additional disability. The Court, in *Sweitzer*, made clear that section 1151 "does not address disabilities that are merely coincidental with the receipt of VA treatment." *Sweitzer,* 5 Vet.App. at 505; *see also* 69 Fed. Reg. at 46,433 ("remote contributing cause" is not a direct cause for purposes of showing section 1151 entitlement).

5

In Mr. Loving's case, the Board found that "[t]here is no evidence to suggest that the falling grate was in any way associated with the actual provision of outpatient medical care and examination at the VA facility." R. at 6. Mr. Loving has not pointed to any evidence that suggests otherwise. As far as the record reflects, the falling ceiling grate had nothing to do with Mr. Loving's July 19, 1999, VA examination and, whether or not Mr. Loving had undergone that examination, the ceiling grate would have fallen at the same time and in the same place. This conclusion is supported by Mr. Loving's December 2001 testimony, wherein he asserted that during the course of his July 19, 1999, VA examination, he and the VA doctor "heard three loud boom[s]" and that "the third boom shook the building" causing the ceiling grate to fall on his knee. R. at 153. Although the actual cause of the falling ceiling grate is unknown, those assertions support a conclusion that the falling ceiling grate was not in any way related to the VA examination that Mr. Loving was undergoing at that time; in that sense, the VA examination was not the actual cause of Mr. Loving's additional disability and arguably cannot be said to have been even "a remote contributory cause" of any such disability, 69 Fed. Reg. at 46,434. It follows that any additional disability sustained as a result of the falling ceiling grate was not part of the natural sequence of cause and effect flowing directly from the actual provision of "hospital care, medical or surgical treatment, or examination" furnished by VA and that any such additional disability was not "direct[ly] cause[d]" by that VA activity, 69 Fed. Reg. at 46,434, and we therefore conclude that Mr. Loving's claim for compensation lies beyond the ambit of section 1151. 38 U.S.C. § 1151(a); *see Sweitzer*, 5 Vet.App. at 505. Consequently, we cannot conclude that the Board's conclusion that that additional disability was not "caused by hospital care, medical or surgical treatment, or examination furnished [by VA]," 38 U.S.C. § 1151(a), was in error.

Finally, we note, as did the Court in *Sweitzer*, that, although the injury sustained by Mr. Loving is not compensable under section 1151, the Federal Tort Claims Act provides, in pertinent part, that "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States" for certain torts committed by federal employees while acting within the scope of their employment, 28 U.S.C. § 1346(b).

6

B.  Duty to Obtain Additional Medical Evidence and Quality-Assurance Records

Pursuant to 38 U.S.C. § 5103A

Although we have already concluded that Mr. Loving is not entitled to compensation under section 1151 because his additional disability was not caused by his VA examination, to the extent that he contends that additional medical evidence and quality-assurance reports could aid him in proving otherwise, we will consider his arguments regarding VA's duty to assist.  Regarding the Secretary's duty to assist, he advances a vague contention that the Board's statement regarding the possibility that "additional medical records are outstanding" amounts to a failure to comply with the duty to assist.  Appellant's Br. at 12 (quoting R. at 3).  He also raises an argument that an M-21-1 "instruction that adjudicators not request quality-assurance records" should be invalidated because it contravenes 38 U.S.C. § 5103A.  *Id.* at 10; *see id.* at 12-17.  We will construe the latter argument as an argument that VA, in deciding his claim, should have obtained and considered any quality-assurance records to the extent that they exist.  That said, we find both of Mr. Loving's contentions of error with respect to the duty to assist to be unavailing.

Section 5103A of title 38, U.S. Code, as added by the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096, requires the Secretary to "make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for benefits." 38 U.S.C. § 5103A(a), (b).  Under section 5103A(b), the Secretary's duty to assist includes making "reasonable efforts to obtain *relevant* records," so long as the claimant "*adequately identifies*" those records to the Secretary and authorizes the Secretary to obtain them.  38 U.S.C. § 5103A(b)(1) (emphasis added).  In addition, section 5103A(c) provides as follows:

> OBTAINING RECORDS FOR COMPENSATION CLAIMS.— In the case of a claim for disability compensation, the assistance provided by the Secretary . . . shall include obtaining the following records *if relevant to the claim*:
>
>> (1) The claimant's service medical records and, if the claimant has furnished the Secretary information sufficient to locate such records, other relevant records pertaining to the claimant's active military, naval, or air service that are held or maintained by a governmental entity.
>>
>> (2) Records of *relevant* medical treatment or examination of the claimant at Department health-care facilities or at the expense of the Department, *if the claimant furnishes information sufficient to locate those records*.

7

(3) Any other **relevant records** held by any Federal department or agency that the claimant **adequately identifies** and authorizes the Secretary to obtain.

38 U.S.C. § 5103A(c) (emphasis added); *see* 38 C.F.R. § 3.159(c)(1), (2), (3) (2004).

Regarding Mr. Loving's contention that the Secretary failed to comply with the duty to assist because the Board made a statement regarding the possible existence of VA medical records that were not before the Board, we observe that the Board did not state that such records actually exist and that at no time before VA or the Court has Mr. Loving even contended that such records might exist. *See* 38 U.S.C. § 5103A(b) (providing that "the Secretary shall make reasonable efforts to obtain relevant records . . . that the claimant **adequately identifies**") (emphasis added); R. at 3; *see also* R. at 1-159; Appellant's Br. at 1-19; Reply Br. at 1-7. In addition, although the record on appeal contains the medical report from the July 19, 1999, examination at issue, that medical report is silent as to what caused the ceiling grate to fall, and Mr. Loving has failed to explain how any subsequently-generated VA medical records would be relevant to demonstrating that the July 19, 1999, examination caused the ceiling grate to fall. *See* 38 U.S.C. § 5103A(b); 38 U.S.C. § 5103A(c)(2) (providing that in a case involving a claim for disability compensation, the Secretary is required to obtain "[r]ecords of *relevant* medical treatment or examination of the claimant at [VA] health-care facilities or at the expense of [VA], if the claimant furnishes information sufficient to locate those records" (emphasis added)); R. at 91.

Our conclusion is no different with respect to Mr. Loving's contention regarding quality-assurance reports. At no point during the pendency of his claim before VA did Mr. Loving ever identify such reports or request that VA obtain and consider them. *See* 38 U.S.C. § 5103A(b); 38 U.S.C. § 5103A(c)(3) (providing that in a case involving a claim for disability compensation, aside from service medical records and VA medical records, the Secretary is required to obtain "[a]ny other *relevant* records held by any Federal department or agency that the claimant *adequately identifies* and authorizes the Secretary to obtain" (emphasis added)). In addition to the fact that he is raising the issue of quality-assurance reports for the first time on appeal to the Court, Mr. Loving has not explained how such reports, assuming that they exist and in light of his December 2001

8

testimony, could possibly be relevant to aiding him in proving that the July 1999 examination caused the ceiling grate to fall on him. *See id*.

In sum, Mr. Loving's arguments amount to no more than an assertion that VA was obligated on its own to seek out medical records and quality-assurance records. As explained above, such an assertion is at odds with a statutory scheme requiring that the claimant adequately identify relevant records that the claimant wishes the Secretary to obtain. Because, at no time during the pendency of his claim before VA, did Mr. Loving ever identify any additional medical records or quality-assurance reports or request VA to provide them nor explain how they might be relevant to his claim under section 1151, we cannot conclude that the Board erred insofar as it concluded that the Secretary had complied with the assistance provisions of section 5103A. In light of the foregoing discussion, there is no need for the Court to address Mr. Loving's challenge to the M-21-1 provision regarding preclusion of access to quality-assurance records, nor speculate as to what the Board might have meant by its vague reference to the possibility that "some VA medical records are outstanding." R. at 3.

### III. CONCLUSION

On consideration of the foregoing, the Court affirms the April 3, 2002, Board decision. AFFIRMED.

9