# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 07-1338

Johnnie R. Mangham, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued August 12, 2009                    Decided November 16, 2009)

*Theodore C. Jarvi*, of Tempe, AZ, was on the brief for the appellant. *Douglas J. Rosinski*, for Ogletree, Deakins, Nash, Smoak & Stewart, P.C., of Columbia, SC, argued the case.

*Rebecca L. Ahern Baird*, with whom *Paul J. Hutter*, General Counsel, *R. Randall Campbell*, Assistant General Counsel, and *Brian B. Rippel*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, MOORMAN, and LANCE, *Judges*.

LANCE, *Judge*, filed the opinion of the Court. KASOLD, *Judge*, filed a concurring opinion.

LANCE, *Judge*: The appellant, Johnnie R. Mangham, through counsel, appeals a February 7, 2007, Board of Veterans' Appeals (Board) decision denying his claim for compensation pursuant to 38 U.S.C. § 1151. Record (R.) at 1-12. The parties each filed briefs, the appellant filed a reply brief, and, pursuant to an order by the Court, the parties filed supplemental briefs. The Court heard oral argument in the case. For the reasons that follow, we will affirm the Board decision.

## I. FACTS

The appellant served in the U.S. Army from October 1963 to June 1976. R. at 16-17. He was "treated in the Temple Domiciliary from September through November 2001 for health

maintenance prior to having femoral surgery," although the record indicates he was also living at the domiciliary in March 2000. R. at 44, 90. While eating lunch at the domiciliary cafeteria in October 2001, he witnessed another domiciliary resident wield a gun and open fire on others eating in the cafeteria. Tragically, three people were wounded, one mortally. R. at 185-86, 195-367.

In March 2002, the appellant underwent a mental health examination. R. at 90. The examiner noted that "[m]edical reports show that the veteran was next to another veteran who was shot in the Temple Domiciliary. Psychiatrist's and [p]sychologist's documentation show that he did not evidence stress symptoms, sleep disturbance, or nightmares related to this incident." *Id.*

In April 2004, three years after the incident, the appellant sought compensation under section 1151 for mental distress due to witnessing the October 2001 shootings. R. at 97. The Waco, Texas, regional office (RO) denied his claim in August 2004, concluding that entitlement to benefits under section 1151 was not warranted because "the shooting in the domiciliary cafeteria was not part of any treatment for [the] veteran. The evidence does not show that the veteran's additional disability is actually the cause of VA care." R. at 124. The appellant filed a Notice of Disagreement in October 2004, indicating that domiciliary care included the provision of medical services and, therefore, his residence at a VA domiciliary was medical treatment. R. at 126-28. He alleged that he incurred additional mental disability because VA negligently provided such treatment, as evidenced by the fact that it did not ensure the security of its facility. R. at 128-30. The RO issued a Statement of the Case and the appellant perfected his appeal in February 2005. R. at 133-55, 159-64.

The Board determined that the events that unfolded in the domiciliary cafeteria in October 2001 did not occur during qualifying hospital care, medical or surgical treatment, or an examination by a VA employee or at a VA facility, despite the appellant's assertions that he was a resident of the domiciliary and that he received medical treatment during the course of his residency. R. at 9-12. Accordingly, the Board found that section 1151 was not applicable to any injury the appellant may have incurred as a result of witnessing the shooting and denied the appellant's claim. R. at 12.

## II.  ARGUMENTS

The appellant argues that the Board erred in finding that his residency in a VA domiciliary care facility did not constitute medical care under 38 U.S.C. § 1151.  Appellant's Brief (Br). at 5.  As a consequence, the appellant contends, the Board erred in determining that the Secretary had fulfilled his duty to assist with regard to releasing the "Root Cause Analysis" (RCA) report pertaining to the October 2001 shooting incident.  Appellant's Br. at 10-14.  The Secretary counters that, because the appellant cannot prevail on a section 1151 claim as a matter of law, the appellant's arguments regarding the duty to assist are moot.  Secretary's Br. at 3, 6.

## III.  ANALYSIS

### A.  Appellant's Claim Under 38 U.S.C. § 1151

The threshold question facing the Court is whether the appellant's claimed disability was caused by VA treatment or care as defined by 38 U.S.C. § 1151.  Intertwined with this is the question of whether domiciliary care qualifies as "hospital care, medical or surgical treatment" for the purposes of a section 1151 claim, such that residing in a VA-run domiciliary facility would render any action that takes place in that facility, including a shooting, part of VA treatment or care for the purposes of a section 1151 claim.

### 1.  Legal Framework

The current version of the statute, which does not differ from that which existed at the time of the incident in question, sets forth certain elements that must be established in order for a claimant to prevail.  *See* 38 U.S.C. § 1151.  Relevant to the analysis here, a claimant must first demonstrate that "the disability or death was caused by hospital care, medical or surgical treatment, or examination." 38 U.S.C. § 1151(a)(1).  Second, a claimant must show that "the proximate cause of the disability or death was . . . carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of [VA] in furnishing the hospital care, medical or surgical treatment, or examination . . . or an event not reasonably foreseeable." *Id.*

The Secretary's implementing regulations indicate that a claimant must prove actual causation.  Specifically,

3

the evidence must show that the hospital care, medical or surgical treatment, or examination resulted in the veteran's additional disability or death. Merely showing that a veteran received care, treatment, or examination and that the veteran has an additional disability or died does not establish cause.

38 C.F.R. § 3.361(c) (2009). Moreover, with regard to proximate causation, the Secretary has made clear that the "proximate cause of disability or death is the action or event that directly caused the disability or death, as distinguished from a remote contributing cause." 38 C.F.R. § 3.361(d).

The Court has previously addressed the issue of causation in section 1151 claims. First, in *Sweitzer v. Brown*, we considered the case of a claimant who, while waiting to undergo a VA medical examination, was struck and injured by another patient in a motorized wheelchair. 5 Vet.App. 503, 506 (1993). Applying the plain language of the then-extant section 1151, we held that the statute "does not address disabilities that are merely coincidental with the receipt of VA treatment." *Id*. at 505. The Court noted that, while the appellant in that case may have had redress under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, any such claim was necessarily not before the Court. *Id.* at 506-07. Although the version of the statute at issue in *Sweitzer* was later amended, as explained below, the Court's analysis with regard to injuries that are coincidental with VA treatment is nevertheless instructive.

Second, in *Loving v. Nicholson*, we considered a case in which a veteran was injured during the course of a VA medical examination when a portion of the ceiling of the examining room fell on him as he was being examined by the VA physician. 19 Vet.App. 96, 100 (2005). The Court reaffirmed its analysis in *Sweitzer*, holding that "the falling ceiling grate was not in any way related to the VA examination that Mr. Loving was undergoing at that time; in that sense, the VA examination was not the actual cause of Mr. Loving's additional disability and arguably cannot be said to have been even 'a remote contributory cause' of any such disability." *Id*. at 101 (quoting 69 Fed. Reg. at 46, 434, now codified at 38 C.F.R. § 3.361(d)).

### 2. Application to the Present Case

Here, as the Board correctly explained in its decision, the appellant's "injury . . . was coincidental to residing at a VA domiciliary and the injury was not caused by the actual provision of hospital care, medical or surgical treatment[,] or examination at the VA domiciliary." R. at 10. This finding is consistent with the plain language of the statute as well as the Court's holdings in

*Sweitzer* and *Loving*. Simply put, the mere fact that a claimant is harmed by an event that occurs coincidentally with VA hospital care, medical or surgical treatment, or an examination is not sufficient to establish causation—and, therefore, to receive benefits—under section 1151.

The analysis in *Loving* is particularly relevant here. In that case, the claimant was undergoing a VA medical examination at the time of the injury, but could not show that the coincidental event was anything more than that—i.e., because the claimant could not demonstrate that the falling ceiling grate was actually part of VA's examination, his claim failed. *Loving*, 19 Vet.App. at 101. To be clear, a claimant hoping to prevail under 38 U.S.C. § 1151 must demonstrate that the *actual* hospital care, medical or surgical treatment, or examination provided by VA caused the claimed disability. If, and only if, a claimant is able to make this showing does the analysis advance to the question of proximate cause. In that respect, inasmuch as an incident such as the shooting at issue here may be "an event not reasonably foreseeable," the question of foreseeability does not become relevant until the claimant first proves that "the disability or death was caused by hospital care, medical or surgical treatment, or examination." 38 U.S.C. § 1151(a)(1). Here, as was the case in *Loving*, the appellant's claim is flawed because he cannot show that the shooting was part of VA's hospital care, medical or surgical treatment, or an examination. His claim, therefore, fails as a matter of law.[1]

In light of this obvious deficiency in his claim, the appellant urges the Court to adopt the view that residing in a VA-run domiciliary care facility is, in and of itself, hospital care, or medical or surgical treatment, as set forth in section 1151. Appellant's Br. at 7-9. In other words, the appellant argues that residing in a VA-run domiciliary facility is per se VA medical treatment and, therefore, anything that occurs in that facility—including the shooting at issue here—is necessarily part of that treatment for the purposes of showing causation under section 1151. This argument fails in two respects.

First, the appellant's argument is simply not supported by a plain reading of the governing statutory provisions. *See* 38 U.S.C. § 1701(5)-(7). "Domiciliary care" is defined as "necessary

---

[1] The Court notes again, as it did in *Loving*, that the appellant may have a cause of action against VA, but that claim is simply not contemplated by Title 38, U.S. Code. Whereas the FTCA explicitly allows for a variety of negligence claims against the United States government, section 1151 is narrowly focused on those instances in which a veteran is harmed directly by VA medical treatment. The FTCA provides, in pertinent part, that "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States" for certain torts committed by federal employees while acting within the scope of their employment. 28 U.S.C. § 1346(b).

medical services and travel and incidental expenses." § 1701(7). "Hospital care" is defined as "medical services rendered in the course of the hospitalization of any veteran, . . . transportation and incidental expenses, . . . [and] mental health services, consultation, professional counseling, marriage and family counseling, and training for the members of the immediate family or legal guardian of a veteran." § 1701(5). "Medical services," at the time of the incident in question, was defined to include surgical services, dental services and appliances, optometric and podiatric services, and preventive health services. § 1701(6). It is clear, and was conceded by counsel for the appellant at oral argument, that domiciliary care is not a medical service. A plain reading of the statute would likewise preclude the conclusion that domiciliary care is a component of hospital care. Domiciliary care, therefore, is not contemplated by section 1151.

Second, and more important, an argument similar to the appellant's was previously adopted by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in the case of *Jackson v. Nicholson*, 433 F.3d 822 (Fed. Cir. 2005), which dealt with a version of 38 U.S.C. § 1151 that Congress has since amended. *See* Secretary's Br. at 5-6; Pub. L. No. 104-204, Title IV, § 422(a), 110 Stat. 2926 (Sept. 26, 1996). That version of section 1151, which predated the 1996 amendments, did not require a claimant to demonstrate that the alleged injury resulted from an overt act by VA. In *Jackson*, the claimant sought recovery for post-traumatic stress disorder (PTSD) that she allegedly suffered as a result of being attacked by a fellow patient while in a VA hospital. The claimant argued that the word "hospitalization" in section 1151, when read with the phrase "as a result of," must allow for compensation of an injury that results while a claimant is in a VA hospital, regardless of whether that injury was a direct result of VA action. The Federal Circuit agreed, holding that "hospitalization . . . must mean something more than actions of the VA." *Jackson*, 433 F.3d at 825. The Federal Circuit concluded that "hospitalization" was not limited to actions by VA personnel. *Id.* The claimant's PTSD therefore resulted from VA hospitalization, notwithstanding the fact that VA personnel did not perpetrate the underlying attack. In the 1996 amendments, Congress repudiated the notion that a coincidental event occurring during "hospitalization" could lead to recovery under section 1151, purposefully replacing that word with "hospital care." *See* Pub. L. No. 104-204, Title IV, § 422(c).

The appellant's case is remarkably similar to the claimant's in *Jackson*. In that regard, under the previous version of the statute, whereby any event occurring while a claimant was hospitalized in a VA center could lead to compensation under section 1151, the appellant's argument regarding domiciliary care may have been meritorious. Now, however, it is clear that the operative issue is not whether the appellant was housed in a VA care facility or whether domiciliary care qualifies under § 1151 as "medical treatment," but whether VA's direct actions caused his harm. As explained above, the Court concludes that the Board correctly determined that VA did not cause the appellant's claimed injury. Rather, the cause in fact of any injury that the appellant now suffers was the criminal action of a third party.

## B. Duty to Assist

The appellant seeks an internal VA report detailing the investigation of the October 2001 shooting that has been termed a Root Cause Analysis report, which the Secretary asserts is described in 38 C.F.R. § 17.501(b)(2) as a medical quality assurance document not subject to disclosure. On the other hand, the appellant argues that the Secretary has a duty to release that report to him pursuant to the duty to assist because it is relevant to his claim. To that end, the appellant filed a Freedom of Information Act (FOIA) request with VA's general counsel, demanding release of that document. The general counsel denied this FOIA request. R. at 377. To the extent that the appellant is asking this Court to address VA's decision to withhold the document pursuant to a FOIA exemption, however, the Court has no jurisdiction to undertake such a review.[2] *See Struck v. Principi*, 15 Vet.App. 213, 215 (2001) (per curiam order) (FOIA is not a matter within this Court's jurisdiction).

The appellant alleges further that the Secretary did not fulfill his duty to assist by refusing to release the Root Cause Analysis. As the Court has already concluded that the appellant's section 1151 claim fails as a matter of law, the contents of the RCA are irrelevant, as the report cannot possibly demonstrate that the shooting was part of VA's provision to the appellant of hospital care, medical or surgical treatment, or an examination. *See* 38 U.S.C. § 5103A(b) (providing that "the Secretary shall make reasonable efforts to obtain *relevant* records . . . ." (emphasis added)); *Loving*,

_____

[2] Of course, the Court expresses no opinion as to whether the RCA report would be discoverable in a civil suit brought under the FTCA.

7

19 Vet.App. at 102; *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992); *Soyini v. Derwinski,* 1 Vet.App. 540, 546 (1991) (stating "strict adherence [to the law] does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case. Such adherence would result in this Court's unnecessarily imposing additional burdens on the [Board] with no benefit flowing to the veteran"); *see also Palor v. Nicholson,* 21 Vet.App. 325, 332-33 (2007) (concluding that, because the appellant is ineligible for VA benefits as a matter of law, he was not prejudiced by § 5103A(a) notice error). Accordingly, even if the Board erred in finding that the Secretary was not required to release the RCA, given that the report is not relevant to the legal issue at hand, the appellant has failed to carry his burden of demonstrating how any such error has prejudiced his claim. *See Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009) (noting that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *see also Allday v. Brown*, 7 Vet.App. 517, 526 (1995) (noting that VA need not "'search for evidence which, even if obtained, would make no difference in the result.'" (quoting *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992))); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). Accordingly, the Court holds that the Board did not commit prejudicial error in finding that the Secretary had fulfilled his duty to assist.

## IV. CONCLUSION

After the Court's consideration of the appellant's and the Secretary's briefs, its review of the record, and its consideration of the parties' positions advanced at oral argument, the February 7, 2007, decision of the Board is AFFIRMED.

KASOLD, *Judge*, concurring in part: Although subtly different than expressed in the majority opinion, I believe the threshold question in this instance is whether Mr. Mangham was receiving VA treatment or care as defined by 38 U.S.C. §1151 at the time he observed the shooting that he claims is the cause of his reported mental distress. I agree with the majority that he was not. Accordingly, Mr. Mangham cannot, and has not, established the relevance of the Root Cause Analysis, and his argument that he should be permitted to review the analysis under 38 U.S.C. § 1151 fails.

I also agree that because Mr. Mangham was not receiving section 1151 care at the time of the incident underlying his claim, we need not reach the issue of whether the shooting constituted "an event not reasonably foreseeable." For this same reason, however, we need not reach the issue of causation, and I do not concur in the nonessential discussion thereof.