**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**


No. 08-4092


MICHAEL J. BARTLETT, APPELLANT,


V.


ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.


On Appeal from the Board of Veterans' Appeals


(Argued December 7, 2010                                   Decided March 10, 2011)



*James Peyster*, of Washington, D.C., for the appellant. *James F. McKeown,* also of Washington D.C., was on the brief for the appellant.

*Mark M. McNabb,* with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Joan E. Moriarty*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and MOORMAN and DAVIS, *Judges*.

KASOLD, *Chief Judge*: Michael J. Bartlett appeals through counsel a September 17, 2008, Board of Veterans' Appeals (Board) decision that denied his claim for disability compensation pursuant to 38 U.S.C. § 1151 (providing for compensation for VA fault in certain circumstances), because it was predicated on injuries received from an attack by another patient while Mr. Bartlett was admitted to a VA hospital, which the Board concluded was outside the scope of section 1151. Mr. Bartlett disputes this understanding of the law. The Secretary seeks affirmance of the Board decision. For the reasons set forth below, the decision of the Board will be set aside and the matters remanded for further adjudication consistent with this decision.


**I. FACTS**

The Board's determination was based on VA hospital treatment records and the allegations of Mr. Bartlett, which are as follows. Mr. Bartlett served on active duty in the U.S. Army from

August 1968 to May 1971. On August 8, 1989, Mr. Bartlett was transferred from the Larimer County jail to a lock-down psychiatric ward at Fort Lyon VA medical center, pursuant to a court order requiring a psychiatric evaluation before the expiration of his 30-day sentence for carrying a firearm. On August 14, while standing in line at the hospital cafeteria authorized for lock-down psychiatric-ward patients, Mr. Bartlett was shoved by another psychiatric-ward patient. Although nursing staff intervened and returned the aggressor to the line, the aggressor eluded them and shoved Mr. Bartlett a second time.[1] Additionally, Mr. Bartlett consistently has stated that (1) he suffered back and neck injuries resulting from this altercation, (2) he was required to go to the cafeteria for meals if he wanted to be fed, and that (3) two hospital staff members were required to escort the aggressor-patient, as VA hospital personnel considered him dangerous.

Mr. Bartlett's present appeal arises from his October 2002 claim for benefits pursuant to section 1151. Ultimately, on administrative appeal, the Board denied compensation "as a matter of law," concluding that "the fact pattern as alleged by the veteran falls outside the current scope of 38 U.S.C. § 1151." Record (R.) at 11. Specifically, the Board determined that Mr. Bartlett "was not injured as a result of hospital care. That is to say, his situation did not arise as a result of the provision of care by the hospital specifically, limited only to treatment or examination rendered by VA." R. at 11. The Board also found that Mr. Bartlett "was not injured as a result of hospital care but rather as a result of an altercation with another patient," which was "merely a coincidental event." R. at 10, 11. This appeal followed.

Succinctly stated, the primary issue before the Court is whether the term "hospital care" under section 1151 includes general supervision of patients in a lock-down psychiatric ward, or, more specifically, protecting a patient from other patients known to be potentially hostile.

## II. THE PARTIES' ARGUMENTS

On appeal, Mr. Bartlett argues that the Board erred in holding that his injury fell outside the

---

[1] The incident report reads as follows: "Incident - MDR - While standing in line at MDR [undecipherable term] about 1700 hrs this patient was shoved by another patient. Nursing staff interred [sic] and other patient got back in line, then suddenly rushed forward and shoved the patient again. Staff report the attack was not provoked by Mr. Bartlett. Patient returned to unit and stated he has a whiplash with pain in left side of upper shoulder and neck." Record (R.) at 511.

scope of section 1151, and that the Board's interpretation of "hospital care" as "limited only to treatment or examination" (R. at 11) violates fundamental principles of statutory interpretation. Rather, he asserts that "hospital care" includes the supervision of dangerous patients in a lock-down ward, and that section 1151 should at least encompass his circumstances, where an injury results from hospital orderlies' negligence during that supervision.

Conversely, the Secretary argues that the Board correctly applied this Court's precedent and did not err. He argues that the Board did not make any finding that the orderlies were negligent, and he also contends that Mr. Bartlett's injuries were caused by another patient, not "hospital care." In support of his argument, the Secretary cites (1) *Mangham v. Shinseki*, 23 Vet.App. 284, 287 (2009), for the proposition that injuries resulting from acts occurring coincidentally with "hospital care, medical or surgical treatment, or an examination" are not sufficient bases for receiving benefits under section 1151, and (2) *Jackson v. Nicholson*, 433 F.3d 822, 826 (Fed. Cir. 2005), for the notion that, as of October 1, 1997, section 1151 no longer awards benefits for injuries occurring as a result of a patient's general experience of hospitalization. The Secretary additionally argues that the Federal Tort Claims Act (FTCA) is a more apt avenue for providing Mr. Bartlett a remedy.

### III.  ANALYSIS
#### A. Section 1151 and Fault

Section 1151 authorizes compensation for certain disabilities in the same manner as if the disabilities were service connected. 38 U.S.C. § 1151 (entitled "Benefits for persons disabled by treatment or vocational rehabilitation"). It is well established that, post-October 1, 1997, section 1151 requires fault on the part of VA. *See id.* (awarding compensation if, inter alia, "the disability or death was caused by hospital care, medical or surgical treatment, or examination" and "the proximate cause of the death or disability was . . . carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault").[2] Therefore, if Mr. Bartlett were arguing that he is entitled

---

[2]  Prior to October 1, 1997, compensation was awarded under section 1151 for injuries that occurred "as the result of [VA] hospitalization, medical or surgical treatment, or . . . having submitted to an examination."  38 U.S.C. § 1151 (1996).  The statute was changed by, inter alia, replacing the term "hospitalization" with "hospital care" and additionally requiring a proximate cause of VA fault.  *See* Pub. L. No. 104-204 (1996).  The legislative history is clear that the change was generated to overturn the U.S. Supreme Court's decision in *Brown v. Gardner*, 513 U.S. 115 (1994), which held that fault was not an element of then-section 1151.  *See* 69 Fed. Reg. 46,426, 46,429 (Aug. 3, 2004) (final

to section 1151 benefits simply because he was in a VA hospital at the time another patient injured him, his argument would fail. *See Jackson*, 433 F.3d at 826 (noting that the term "hospital care" in section 1151 "implies the provision of care by the hospital specifically, as opposed to the broader, more general experience of a patient during the course of hospitalization"); *Mangham*, 23 Vet.App. at 289 ("Congress repudiated the notion that a coincidental event occurring during 'hospitalization' could lead to recovery under section 1151, purposefully replacing that word with 'hospital care.'"). This is because, as our precedents state, injuries resulting from acts purely coincident with VA hospital care, treatment, or examination are not entitled to compensation. *See Mangham,* 23 Vet.App. at 287 (holding that a mental distress injury resulting from a shooting at a VA domiciliary "'was coincidental to residing at a VA domiciliary and . . . not caused by the actual provision of hospital care, medical or surgical treatment[,] or examination'" (quoting *Johnnie R. Mangham*, BVA 05-07615, at 10 (Feb. 7, 2007))); *Loving v. Nicholson*, 19 Vet.App. 96, 100 (2005) (holding that an injury resulting from the fall of a ceiling grate during a VA examination was "coincidental to the examination and was not . . . caused by it"); *see also* NEW OXFORD AMERICAN DICTIONARY 337 (3d ed. 2010) [hereinafter OXFORD] (defining "coincidental" as, inter alia, "happening by chance")*.* However, Mr. Bartlett's argument is not that recovery is warranted because of the mere fact that his injury occurred while in a VA facility. Rather, he argues that the supervision of hospital patients in a lock-down psychiatric facility constitutes "hospital care" and the negligent performance of that supervision caused his injury.

## B. Defining "Hospital Care"

Although our precedents mention "hospital care" in conjunction with "treatment" and "examination," none have analyzed "hospital care" specifically detached from "treatment" and "examination." In *Loving*, the injury occurred during an outpatient examination at a VA clinic, and this Court's analysis centered on whether the fall of the ceiling grate during that examination "was caused by the VA examination," not "hospital care." *Id.* at 98, 100. In *Mangham*, the injury

---

rule regarding 38 C.F.R. § 3.361 (2010), the implementing regulation for section 1151) ("The legislative history makes clear that the purpose of the amendment was to add a requirement for a showing of fault or negligence in addition to the causation requirement in the statute."); 142 CONG. REC. S9932 (daily ed. Sept. 5, 1996) (amended statute would "requir[e] that there be an element of fault as a precondition for entitlement to compensation for a disability or death resulting from health care or certain other services furnished by [VA]").

occurred at a domiciliary and the matter at issue involved domiciliary care, which the Court determined was not a component of "hospital care." *Id.* at 288. In *Jackson*, although the U.S. Court of Appeals for the Federal Circuit instructed that "hospital care" was narrower than "the broader, more general experience of a patient during the course of hospitalization," it went no further in clarifying the meaning or scope of "hospital care." *Id.* at 826.

Thus, to determine whether the supervision of hospital patients in a lock-down psychiatric facility constitutes "hospital care," we must begin with the ordinary meaning of "care." *Lee v. West*, 13 Vet.App. 388, 394 (2000) ("'The starting point in interpreting a statute is its language.'" (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993))); *see Jones v. Brown*, 41 F.3d 634, 638 (Fed. Cir. 1994) ("In determining the plain meaning of statutory language, 'legislative purpose is expressed by the ordinary meaning of the words used.'" (quoting *Ardestani v. INS*, 502 U.S. 129, 136 (1991))). "Care" is defined as, inter alia, "the provision of what is necessary for the health, welfare, maintenance, and protection of someone or something." OXFORD at 263; *see also* WEBSTER'S NEW WORLD DICTIONARY 212 (3d ed. 1988) ("charge; protection; custody" or "something to watch over or attend to; a responsibility"). In the legal realm, "care" is defined as "the conduct demanded of a person in a given situation," typically in the context of "giving attention both to possible dangers, mistakes, and pitfalls and to ways of minimizing those risks." BLACK'S LAW DICTIONARY 240 (9th ed. 2009).

At oral argument, Mr. Bartlett argued that "hospital care" is occurring whenever the VA is providing hospital services to its patients. We initially note that Mr. Bartlett's definition, invoking the notion of providing for or having responsibility over another, accords with the plain meaning of "care."

Conversely, the Secretary argued that "hospital care" should be limited to "medical services," as referenced in 38 U.S.C. § 1701(5), to wit:

> The term "hospital care" includes –
>
> (A)(i) medical services rendered in the course of the hospitalization of any veteran, and (ii) travel and incidental expenses pursuant to the provisions of section 111 of this title;
>
> (B) such mental health services, consultation, professional counseling,

marriage and family counseling, and training for the members of the immediate family or legal guardian of the veteran . . . as the Secretary considers appropriate for the effective treatment and rehabilitation of a veteran or dependent or survivor of a veteran receiving care . . . .

However, as is evident by the plain language, section 1701(5)'s definition of "hospital care" is not limited to medical services. *See Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1360 (Fed. Cir. 2001) (noting that a definition using the term "includes" is "open-ended"). Further, the enumerated examples of the section include "travel and incidental expenses," "marriage and family counseling, and training for the members of the [veteran's] immediate family," and other terms that make little sense when applied to section 1151, which weigh against implementing this definition of "hospital care" for section 1151. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69-70 (1994) (assuming that Congress did not intend a statute to create odd or absurd results). We also note that, although *Mangham* mentioned section 1701(5), it used the statute to illustrate the difference between "hospital care" and "domiciliary care," not to adopt a definition of "hospital care" limited to medical services. *See* 23 Vet.App. at 288.

Also at oral argument, the Secretary rejected the notion that the definition of "hospital care," as provided by 38 U.S.C. § 1803(c)(4) (addressing care for the children of Vietnam veterans born with spina bifida), could aid in determining the meaning of "hospital care" in section 1151 because, by its own terms, the definition is directly applicable only to that section, *see* 38 U.S.C. § 1803(c) ("For the purposes of this section"). Acknowledging no direct applicability, we nevertheless note that this definition may assist in evincing the meaning of "hospital care" as used in section 1151 for two reasons. First, unlike section 1701(5)'s open-ended definition, which includes many terms clearly not applicable to section 1151, section 1803(c)(4) provides a general definition that creates no friction with section 1151, to wit: "The term 'hospital care' means care and treatment for a disability furnished to an individual who has been admitted to a hospital as a patient." 38 U.S.C. § 1803(c)(4). Second, the definition of section 1803(c)(4) was introduced and passed in the same bill that added "hospital care" to section 1151, which may provide an indication of Congress's intent in using those words. *See Erlenbaugh v. United States*, 409 U.S. 239, 243-44 (1972) (the rule that "a legislative body generally uses a particular word with a consistent meaning . . . certainly makes the most sense when the statutes were enacted by the same legislative body at the same time"); Pub.

L. No. 104-204 (1996).

Accordingly, after considering the plain meaning and other definitions of "hospital care" provided in veterans law, we agree with Mr. Bartlett that "hospital care," at a minimum, includes the provision of services unique to the hospitalization of patients. Such a definition accords with the plain meaning of "care," resembles section 1803(c)(4), and is in harmony with *Jackson*, 433 F.3d at 826 ("The term 'hospital care' implies the provision of care by the hospital specifically . . . ."). Although we will not further define "hospital care" or "patient" in the abstract, *Edenfield v. Brown*, 8 Vet.App. 384, 390 (1995) (refusing to deal with abstract concepts divorced from facts of the case), the determination as to whether a situation involves "hospital care" will depend on a variety of factors, including the nature of the services,[3] the degree of VA control over patient freedom,[4] the mental and physical conditions of the patients,[5] and the foreseeability of potential harms.[6] These are factors best considered by the Board in the first instance.

## C. Application of Law

In its decision on Mr. Bartlett's claim, the Board found "as a matter of law" that "the fact pattern as alleged by the veteran falls outside the current scope of 38 U.S.C. § 1151." R. at 11.

---

[3] *See Bodin v. Vagshenian*, 462 F.3d 481, 489 (5th Cir. 2006) ("A provider of psychological services has a heightened duty of care to its patients because of their vulnerability and the resulting special relationship."); *Kastler v. Iowa Methodist Hosp.*, 193 N.W.2d 98, 101-02 (Iowa 1971) (noting the differences between routine care and professional care).

[4] *See Galloway v. Baton Rouge Gen. Hosp.*, 602 So. 2d 1003, 1008 (La. 1992) (hospital has duty to protect patient from dangers "peculiarly within the hospital's control"); *Becker v. Mayo Found.*, 737 N.W.2d 200, 212 (Minn. 2007) (hospital's duty to protect based on the fact that patients are "'particularly vulnerable and dependent on the [hospital], who in turn holds considerable power over the [patients'] welfare'" (quoting *Donaldson v. Young Women's Christian Ass'n*, 539 N.W.2d 789, 792 (Minn. 1995))); *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 252, 253 (N.Y. 2002) (hospital's "duty to safeguard the welfare of its patients . . . [is] measured by the capacity of the patient to provide for his or her own safety").

[5] *See Johnson v. Grant Hosp.*, 291 N.E.2d 440, 446 (Ohio 1972) ("A hospital owes a duty to its patients to exercise such reasonable care for their safety as their known mental and physical condition may require."); *see also Hunt v. Bogalusa Cmty. Med. Ctr.*, 303 So. 2d 745, 747 (La. 1974); *Harder v. F.C. Clinton, Inc.*, 948 P.2d 298, 304 (Okla. 1997); *McGraw v. St. Joseph's Hosp.*, 488 S.E.2d 389, 396 (W.Va. 1997); *Hofflander v. St. Catherine's Hosp., Inc.*, 664 N.W.2d 545, 572 (Wis. 2003).

[6] *See Bembenista v. United States*, 866 F.2d 493, 498 (D.C. Cir. 1989) ("'Traditionally, relationships that were considered to give rise to a duty of one party to protect the other part[y] from foreseeable criminal acts of third persons have included the relationship [] of . . . hospital to patient . . . .'" (quoting *Hall v. Ford Enters., Ltd.*, 445 A.2d 610, 611 n.4 (D.C. App. 1982)) (second alteration in original); *Cabrini Med. Ctr.*, 97 N.Y.2d at 253 (while a hospital has no duty to keep each patient under constant surveillance, it does have duty to guard against reasonably foreseeable harms).

7

Specifically, the Board determined that Mr. Bartlett's "situation did not arise as a result of the provision of care by the hospital specifically, limited only to treatment or examination rendered by VA." R. at 11. The Board also stated that Mr. Bartlett "was not injured as a result of hospital care but rather as a result of an altercation with another patient," which was "merely a coincidental event." R. at 10, 11. Such statements reflect that the Board has applied the law incorrectly and remand is warranted. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

First, the Board clearly erred in finding the facts as alleged by Mr. Bartlett outside the scope of section 1151. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1991) ("'A finding is "clearly erroneous" when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))). Allegedly, Mr. Bartlett was a hospital patient in a lock-down psychiatric ward where VA staff had total control over his movement and mandated his presence at the cafeteria for meals. Allegedly, the facility contained patients who were mentally unstable and dangerous in such a foreseeable way that VA staff provided escorts to those individuals. Considering the aforementioned factors regarding whether a situation involves "hospital care," we have the firm conviction that the alleged situation involved "hospital care." *See Gilbert*, *supra*. If the Board adopts the alleged facts on remand, then the matters remaining to be resolved are whether the "hospital care" (1) was provided with "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault" and (2) was the "proximate cause of the disability or death." 38 U.S.C. § 1151.

Additionally, the Board's definition of "hospital care" as "limited only to treatment or examination" is not in accordance with law. R. at 11. First, it does not accord with our holding above, that "hospital care" includes the provision of services unique to the hospitalization of patients. Second, the Board's definition, limiting one enumerated term in a statute to two other enumerated terms in a statute, violates the cardinal principal of statutory construction that Congress does not insert superfluous, void, or insignificant words into its statute. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001) and *United States v. Menasche*, 348

8

U.S. 528, 538-39 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute' . . . ." (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)))). Third, the Board's definition does not give effect to the plain meaning of the words "care," "treatment," and "examination," which are definitionally distinct.[7]

Moreover, the Board's suggestion that an injury resulting from an altercation with a third party cannot be an injury caused by "hospital care" for the purposes of section 1151 is misguided. There are circumstances where a third-party attack is not a coincidental event, *see* OXFORD at 337, and where that attack is indeed proximately caused by the negligent provision of VA hospital services to a hospital patient. We expressly reject the Secretary's argument that *Mangham* broadly held that injuries due to third-party actions in all situations are intervening acts and per se not caused by hospital care, treatment, or examination. 23 Vet.App. at 289. The attack in *Mangham* occurred in the cafeteria of a domiciliary facility and involved no medically related supervision of the veterans present at the time of the incident. *Id.* at 288.

Finally, we also reject the Secretary's argument that the availability of the FTCA as a remedy precludes the award of section 1151 benefits to Mr. Bartlett. Our precedents neither state nor imply any such preclusion. *See Mangham*, 23 Vet.App. at 288 n.1 (citing *Sweitzer v. Brown*, 5 Vet.App. 503, 506 (1993)); *Loving*, 19 Vet.App. at 101 (same); *Sweitzer*, 5 Vet.App. at 506 (acknowledging that veteran could have raised his claim "in a suit against the United States under the Federal Tort Claims Act," but not precluding benefits on that ground). Additionally, despite the fact that fault-based claims against the United States are permitted under the FTCA, Congress nevertheless provided an additional avenue for veterans' fault-based claims in certain circumstances, e.g., when disability or death results from negligent hospital care, medical or surgical treatment, or examination furnished to a veteran under laws administered by the Secretary. 38 U.S.C. § 1151. Providing multiple avenues of relief is not unusual with regard to veterans benefits. *Cf. Ribaudo v. Nicholson*, 21 Vet.App. 137, 144 (2007) (noting that veterans are uniquely provided "multiple layers of VA decision review . . . [and] two separate layers of appeal of right to independent judicial review")*;*

---

[7] "Treatment" is defined as, inter alia, "medical care given to a patient for an illness or injury." OXFORD at 1844. "Examination" is defined as, inter alia, "a detailed inspection or investigation." *Id.* at 602. "Care" is defined above at section III.B, *supra*.

*Trilles v. West*, 13 Vet.App. 314, 332 (2000) (noting that 38 U.S.C. § 5107(a) provides veterans a "unique standard of proof [that] is unlike that available to any other civil plaintiff or claimant"); *see also Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

## IV. CONCLUSION

Upon consideration of the foregoing, the September 17, 2008, Board decision is SET ASIDE and the matter is REMANDED for further development and readjudication consistent with this decision. On remand, Mr. Bartlett may also present, and the Board must consider, any additional evidence and argument in support of the matters remanded. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). These matters are to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.