Citation Nr: 1205186 
Decision Date: 02/10/12 Archive Date: 02/23/12

DOCKET NO. 10-22 001 ) DATE
 )
 )

Received from the
Department of Veterans Affairs Regional Office in Salt Lake City, Utah


THE ISSUES

1. Entitlement to service connection for left elbow tendonitis/cellulitis. 

2. Entitlement to service connection for right elbow tendonitis/cellulitis. 

3. Entitlement to service connection for a stress fracture of the right leg.

4. Entitlement to service connection for a stress fracture of the left leg.

5. Entitlement to service connection for a stress fracture of the right foot.

6. Entitlement to service connection for a stress fracture of the left foot.


REPRESENTATION

Appellant represented by: Colorado Division of Veterans Affairs


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

K. Neilson, Counsel


INTRODUCTION

The Veteran served on active duty from January 1997 to January 2000.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from March and April 2009 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Denver, Colorado. 

The Veteran testified at a Board hearing before the undersigned Veterans Law Judge in December 2010. A transcript of the hearing is included in the claims folder.

(The decision below addresses the Veteran's claim of service connection for a stress fracture of the left foot. The remainder of the Veteran's claims are addressed in the remand that follows the Board's decision.)


FINDING OF FACT

The Veteran does not have a currently diagnosed left foot disability related to an in-service stress fracture.



CONCLUSION OF LAW

The Veteran does not have a left foot disability that is the result of disease or injury incurred in or aggravated during active military service. 38 U.S.C.A. §§ 1110, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2011).


REASONS AND BASES FOR FINDING AND CONCLUSION

The law provides that service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. § 1110 (West 2002); 38 C.F.R. §§ 3.303, 3.304 (2011). Service connection may be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Generally, establishing service connection requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999). 

The Veteran contends that he has a left foot disability as a result of his military service. Specifically, he states that while in service, he sustained a stress fracture in his left foot. He asserts that he has experienced continuous left foot pain since that time. 

A review of the Veteran's service treatment records (STRs) shows that in March 1999, the Veteran presented with complaints of pain in the dorsal medial metatarsal of the left foot, as well as pain in the plantar section. He indicated that the pain had begun 14 months earlier and had gradually increased in severity since that time. A treatment note dated that same month shows that a bone scan was positive for stress changes. A separation examination report is not of record. 

The claims folder is silent for post-service treatment related to the left foot. During his December 2010 hearing, the Veteran stated that he has experienced pain in the arch of his left foot since service. He reported no post-service treatment related to the left foot pain, stating that he has just been "putting up with it."

In September 2010, the Veteran was afforded a VA examination to determine whether he had a left foot disability and, if so, whether that disability was related to military service. The examiner reviewed the Veteran's claims folder, noting the in-service complaints of left foot pain and results of the bone scan showing stress changes. The examiner noted that the Veteran was given orthotics and was instructed not to run for 10 days. She also acknowledged the Veteran's lay statements regarding continuity of pain since service. 

The Veteran reported pain on the anterior portion of his foot, occurring approximately 10 times a day when he stood after prolonged sitting. He indicated no treatment, stating that the pain resolved with walking. During a flare-up, the Veteran experienced increased pain and decreased range of motion. Weakness, fatigue, and incoordination were denied, as was any other injury. The examiner noted that the complained-of pain was on the top of the foot, on the inside, and not on the sole of the foot. 

Range-of-motion testing revealed a full range of dorsiflexion and plantar flexion without pain. There was no tenderness around the ankle, anterior foot, or anywhere on the foot or sole. Squeezing the metatarsals did not produce pain. There was no edema, skin changes, toe abnormalities, or tenderness on manipulation of the arch. The examiner noted that the Veteran's arch lost about 25 percent of height with weightbearing. 

The examiner found the Veteran's left foot to be normal on examination. She noted that although the Veteran complained of frequent anterior foot pain upon standing, which is common for plantar fasciitis, there was no pain along the sole of the foot, which is typically where plantar fasciitis occurs. The examiner also noted the absence of tenderness. As for the Veteran's in-service diagnosis of a stress fracture, the examiner stated that typically stress fractures heal after the inciting event or cause has been taken away. As the Veteran no longer runs, the examiner indicated that continued stress fractures or stress reactions would not be expected. X-rays of the left foot were obtained, the results of which showed no acute fracture or dislocation. Minimal bilateral first metatarsophalangeal osteoarthritis was present, which the examiner found was not compatible with his current pain complaints but was an incidental finding. The examiner indicated that a normal x-ray would result in insufficient evidence at present to warrant a diagnosis of any specific chronic pathological disorder of the left foot.

The Board notes that Congress has specifically limited entitlement to service connection to instances where disease or injury has resulted in a disability. See 38 U.S.C.A. §§ 1110, 1131. As such, an essential element of a service connection claim is the establishment of a current disability. The evidence reflects that the Veteran does not have a diagnosed left foot disability. Although the Veteran has stated that he experiences pain in his left foot, without a diagnosed or identifiable underlying malady or condition to explain the pain, pain alone does not in and of itself constitute a disability for which service connection may be granted. See Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999), dismissed in part and vacated in part on other grounds sub nom. Sanchez-Benitez v. Principi, 259 F.3d 1356 (Fed.Cir.2001). Here, the results of the September 2010 VA examination, to include x-ray findings, failed to indicate a pathological left foot disorder resulting from the Veteran's in-service foot injury. Although osteoarthritis of the first metatarsophalangeal was noted, the examiner concluded that that finding was not consistent with the Veteran's complained-of foot pain, and therefore cannot be considered the cause of any current disability. 

The Board notes that lay evidence may be sufficient to establish a current diagnosis. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir 2007) (describing situations when lay evidence can be competent and sufficient to provide medical diagnosis). Here, however, the Veteran has not provided lay evidence of a current diagnosis. Rather, he has asserted only that he suffers from left foot pain, which he believes is related to an injury during active military service. As such, he has presented no lay evidence of a current disability.

Accordingly, without evidence of a currently diagnosed left foot disability, the Board finds that the claim of service connection for a left foot stress fracture must be denied. See Brammer, supra. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990); 38 C.F.R. § 3.102 (2011).

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2011), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2011), provides that VA will assist a claimant in obtaining evidence necessary to substantiate a claim. They also require VA to notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of the notice, VA is to specifically inform the claimant and the claimant's representative of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant.

(The Board notes that 38 C.F.R. § 3.159 was revised, effective May 30, 2008. See 73 Fed. Reg. 23353-56 (Apr. 30, 2008). The amendments apply to applications for benefits pending before VA on, or filed after, May 30, 2008. The amendments, among other things, removed the notice provision requiring VA to request the veteran to provide any evidence in the veteran's possession that pertains to the claim. See 38 C.F.R. § 3.159(b)(1).)

The VCAA notice requirements apply to all five elements of a service connection claim. These are: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The RO received the Veteran's claim of service connection for a left foot disability in September 2008. That same month, the RO sent to him a letter notifying him of the evidence required to substantiate his claim. The letter advised the Veteran of the information already in VA's possession and the evidence that VA would obtain on his behalf, as well as of the evidence that he was responsible for providing to VA, to include any records not in the possession of a Federal agency. The RO further advised the Veteran on the types of evidence he could submit that would support his claims for service connection, such as the dates of medical treatment during service, evidence of medical treatment since service, employment physical examination reports, insurance examination reports, and statements by persons who knew of the Veteran's disability. The letter also included the notice elements required by Dingess for how VA determines disability ratings and effective dates. 

The Veteran has not disputed the contents of the VCAA notice in this case. Further, the Board finds that the September 2008 notice letter complies with the requirements of 38 U.S.C.A. § 5103(a), and afforded the Veteran a meaningful opportunity to participate in the development of his claim of service connection for a left foot disability. Thus, the Board is satisfied that the duty-to-notify requirements under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) were satisfied.

Regarding the duty to assist, the Board also finds that VA has fulfilled its obligation to assist the Veteran. All available evidence pertaining to the Veteran's claim has been obtained. The evidence includes his STRs, private treatment records, the VA examination reports, and the Veteran's lay statements, to include his December 2010 hearing testimony. The Board notes that although, as will be discussed in greater detail below, it is remanding certain other claims of service connection to obtain records from Madigan Army Medical Center, because the Veteran's STRs confirm an in-service diagnosis of a left foot stress fracture, whether the Veteran sustained an in-service injury to his left foot is not at issue in this case. Thus, records pertaining to the bone scan done at Madigan Army Medical Center would not be necessary in connection with the Veteran's left-foot claim because an in-service injury has been established and those records are not relevant to the issue of current disability. 

The Veteran was also afforded a VA examination in September 2010 in connection with his claim of service connection for a left foot disability disability. The examiner reviewed the claims folder, took a detailed history from the Veteran, conducted a physical examination of the Veteran's left foot, and obtained x-rays. The examiner ultimately concluded that the Veteran did not have a current left foot disability, as evidenced by a normal x-ray, save for metatarsophalangeal osteoarthritis that was an incidental finding and did not account for the Veteran's complained-of pain. The Board finds that the examination report contains sufficient evidence by which to evaluate the Veteran's service connection claim and the Board finds that the examiner's opinion is supported by an adequate rationale. 


ORDER

Entitlement to service connection for a stress fracture of the left foot is denied. 


REMAND

Under 38 U.S.C.A § 5103A, VA must "make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary." 38 U.S.C.A § 5103A(a)(1) (West 2002); see 38 C.F.R. § 3.159(c) (2011) (obligating VA to obtain relevant records from Federal department or agency). This duty to assist includes making "reasonable efforts to obtain relevant records (including private records)," as long as the claimant "adequately identifies" those records and authorizes the Secretary to obtain them. 38 U.S.C.A § 5103A(b)(1); Loving v. Nicholson, 19 Vet. App. 96, 101-02 (2005). When VA searches for records kept by the government, the search "shall continue until the records are obtained unless it is reasonably certain that such records do not exist or that further efforts to obtain those records would be futile." 38 U.S.C.A § 5103A(b)(3); 38 C.F.R. § 3.159(e)(1) ("If . . . after continued efforts to obtain Federal records [VA] concludes that it is reasonably certain they do not exist or further efforts to obtain them would be futile, VA will provide the claimant with oral or written notice of that fact."). "Relevant records for the purpose of [38 U.S.C.A.] § 5103A are those records that relate to the injury for which the claimant is seeking benefits and have a reasonable possibility of helping to substantiate the veteran's claim." Golz v. Shinseki, 590 F.3d 1317, 1321 (Fed.Cir.2010); see, e.g., Moore v. Shinseki, 555 F.3d 1369, 1374 (Fed.Cir.2009) (stating that "VA is statutorily required to obtain all of the veteran's relevant service medical records, not simply those which it can most conveniently locate").

The Veteran has asserted that he sustained stress fractures to his both legs and both feet in service. Specifically, the Veteran has stated that during service he was seen at Madigan Army Medical Center at Fort Lewis, Washington, during which time he was "injected . . . with some type of radio-active dye" and given what he believed to be a CT (Computerized Axial Tomography) scan that showed stress fractures from "about [his] knees all the way down to [his] toes." He indicated that since that time, he has had problems with his feet and legs, to include pain in his arches and shins.

As noted above, the Veteran's STRs shows complaints of right foot pain and indicate that the Veteran received a bone scan in March 1999. Although the Veteran's STRs note that the bone scan was positive for stress changes, the report of the bone scan itself is not of record. Further, it is not clear from the Veteran's STRs whether the indicated "stress changes" were limited to the Veteran's left foot or whether his right foot and legs may have also been involved, as alleged by the Veteran. 

Upon consideration of the Veteran's assertion that he was treated at Madigan Army Medical Center, where he was diagnosed as having bilateral stress fractures in his legs and shins, and the fact that his STRs document that a bone scan was conducted in March 1999, the Board finds that a remand of the Veteran's claims of service connection for right foot and right and left leg stress fractures must be remanded for the agency of original jurisdiction (AOJ) to attempt to obtain any treatment records pertaining to the Veteran, to include the report of the March 1999 bone scan, from Madigan Army Medical Center so that the adjudication of the Veteran's claims is a fully informed one. See Golz, supra; 38 C.F.R. § 3.159(c)(2).

As to the Veteran's claims of service connection for left and right elbow disabilities, the Board notes that the Veteran's STRs show treatment related to right elbow pain. The assessment was bursitis with secondary cellulitis. Post-service private treatment records from SSC Family Practice dated in January and February 2009 show that the Veteran presented with an upper extremity injury. He complained of sharp, moderate pain in his elbows. Previous treatment was not indicated. The physician stated that he had reviewed the Veteran's history from November 29, 2007, and that no changes were required. A past history of bilateral elbow bursitis was noted. The February 2009 treatment entry indicates that x-rays were taken. The September 2010 VA examination report notes that the Veteran was seen for treatment related to his elbows in 2007 and that x-rays were taken at that time. 

Upon review of the VA examination report and the private medical records, it appears that there are outstanding private records related to treatment of the Veteran's elbows. As records related to treatment for the specific conditions for which the Veteran is claiming service connection are relevant records, see Golz, supra, the Board finds that the claims of service connection for right and left elbow disabilities must be remanded for the AOJ to attempt to obtain all relevant records related to treatment of the Veteran's elbows.

On remand, the AOJ should contact the Veteran with a request that he provide the full name and address for the private physician or facility from which he received treatment in November 2007. Following receipt of the necessary authorization for release of such private medical records to VA, the AOJ should attempt to obtain any identified private treatment records. The AOJ should also contact the SSC Family Practice with a request that all records related to treatment of the Veteran be provided to VA. This should include the reports of any x-rays taken in January or February 2009, as well as copies of any records reviewed at the time of the Veteran's January and February 2009 office visits. The Veteran is reminded that "the duty to assist is not always a one-way street." Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). He must provide the AOJ with enough identifying information to enable the AOJ to obtain any private treatment records.

VA's duty to assist also includes the duty to provide a medical examination or obtain a medical opinion "when such an examination or opinion is necessary to make a decision on the claim." 38 U.S.C.A. § 5103A(d). When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); 38 C.F.R. § 3.159(c)(4).

In the instant case, the Denver, Colorado, RO scheduled the Veteran for VA examinations in connection with his claims of service connection for a right and left foot disabilities and a right elbow disability in December 2009. The Veteran failed to report for those examinations because he was no longer residing in Colorado at that time. In February 2010, the Muskogee, Oklahoma, RO requested that the Veteran be scheduled for a VA examination in connection with his feet and elbow claims. The Veteran again failed to report, indicating that he was unable to attend the scheduled examination due to job requirements. The examinations were rescheduled for June 2010, but were cancelled by MAS (Medical Administration Services) because they had been scheduled for an "incorrect jurisdiction." The record shows that the Veteran had relocated to Utah. In September 2010, the RO requested that the Veteran be scheduled for VA examinations in connection with his claims of service connection for a left foot and right elbow disability. The Veteran was not rescheduled for a VA examination in connection with his claim of service connection for a right foot disability and although the September 2010 VA examiner examined the Veteran's right foot, she did not provide an opinion as to current disability or nexus. 

As it was previously determined by the RO that a VA examination was necessary in connection with the Veteran's claim of service connection for a right foot disability, and there is no indication as to why the Veteran was not rescheduled for that examination, despite being rescheduled for his other missed examinations, the Board finds that the Veteran's claim of service connection for a right foot stress fracture must also be remanded for an examination that addresses the nature and etiology of any current right foot disability. The examiner should include a nexus opinion as to whether it is at least as likely as not that any currently diagnosed right foot disability was caused or aggravated by the Veteran's military service. 

In September 2010, the Veteran was afforded a VA examination in connection with his claim of service connection for right elbow tendonitis/cellulitis. The examiner was requested to determine whether the Veteran had a current right elbow disability and, if so, to opine as to the likelihood that any current disability was related to the Veteran's military service. 

Upon review of the claims folder and examination of the Veteran, the examiner diagnosed a right elbow strain and opined that "it is less likely as not . . . that [the Veteran's] current left elbow condition is caused by or the result of the right elbow condition he was treated for during military service." As the examiner did not opine as to the likelihood that the Veteran's right elbow disability, diagnosed as right elbow strain, is related to service, the examination report is not adequate for evaluation purposes. Further, it is unclear whether the examiner determined that the Veteran also suffers from a current left elbow disability. Moreover, it does not appear as though the examiner took into consideration the Veteran's report of bilateral elbow pain since service. Accordingly, the Board finds that the Veteran's claims of service connection for right and left elbow disabilities must also be remanded for the Veteran to be scheduled for a new VA examination that determines the nature and etiology of any current left or right elbow disability. 

The Board notes that the Veteran has not been afforded a VA examination in connection with his claims of service connection for right and left leg disabilities. In accordance with the duty-to-assist provisions codified at 38 U.S.C.A § 5103A(d) and by regulation found at 38 C.F.R. § 3.159(c)(4), a medical opinion or examination is required if the information and evidence of record does not contain sufficiently competent medical evidence to decide the claim, but there is

(1) competent evidence of a current disability or persistent or recurrent symptoms of a disability; and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies; and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran's service or with another service-connected disability.

See McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

As the record currently stands, the duty to provide a medical examination in connection with the Veteran's right and left leg claims has not been triggered because the evidence does not show an event or injury in service nor a current left or right leg disability. While the Veteran has indicated that he sustained right and left leg stress fractures in service, his STRs contain no evidence of any leg disabilities or complaints related to the shins. If, however, on remand information obtained from Madigan Army Medical Center shows treatment related to the Veteran's legs, the Veteran should be scheduled for a VA examination to determine the nature and etiology of any current right or left leg disability, as the Veteran's complaints of leg pain may constitute persistent or recurrent symptoms of a disability and his assertion that he has suffered from bilateral leg pain since service would satisfy the "low threshold" necessary to establish entitlement to a VA medical examination. McLendon, 20 Vet. App. at 83 (stating that "[t]he types of evidence that 'indicate' that a current disability 'may be associated' with military service include . . . credible evidence of continuity of symptomatology such as pain or other symptoms capable of lay observation").

Accordingly, the case is REMANDED to the AOJ for the following action:

1. The AOJ should contact the Veteran and request that he identify the names, addresses, and approximate dates of treatment for all VA and non-VA health care providers who may have additional evidence related to his remanded claims. The AOJ should attempt to obtain copies of pertinent treatment records identified by the Veteran that have not been previously secured and associate them with the claims folder.

The AOJ should specifically request from the Veteran that he provide the full name and address for the private physician or facility from which he reportedly received treatment in November 2007. Following receipt of that information, the AOJ should contact the physician or facility in question, with a request that copies of any and all records of treatment or examination of the Veteran on file be provided to the AOJ. The AOJ should also contact SSC Family Practice with a request that copies of any and all records of treatment or examination of the Veteran on file, to specifically include the reports of any x-rays and copies of any records reviewed in conjunction with treatment of the Veteran, be provided to the AOJ. The Veteran should be requested to sign the necessary authorization for release of such private medical records to VA.

All attempts to procure those records should be documented in the file. If the AOJ cannot obtain records identified by the Veteran, a notation to that effect should be inserted in the file. In addition, the Veteran and his representative should be informed of any such problem and given opportunity to provide the records.

2. The AOJ must contact the Madigan Army Medical Center at Fort Lewis, Washington, for any hospitalization, surgical, or treatment records for the Veteran. Madigan Army Medical Center should be asked to respond by indicating: (1) they have the requested records and are forwarding them; or, (2) they do not have any records for the Veteran and can certify that the records do not exist, were retired to storage, destroyed, or sent to another destination. If they were retired to storage, they must be recalled. If they were sent to another destination, the records must be requested from the other location.

3. After the development ordered in paragraph 1 and 2 above is completed, schedule the Veteran for a VA orthopedic examination in connection with his claims of service connection for a right foot, a right elbow, and a left elbow disability. The claims folder, and a copy of this remand, must be provided to and reviewed by the examiner as part of the examination. 

All necessary tests and studies, to include x-rays, should be conducted and a complete history should be taken. The examiner should be asked to review the entire record, take a detailed history from the Veteran, and address the following:

a) the examiner should identify all current right foot disabilities and provide an opinion as to whether any currently diagnosed right foot disability is at least as likely as not related to the Veteran's period of military service. 

b) the examiner should also identify any current left elbow disability and opine whether it is at least as likely as not that any such disability is related to any period of military service.

b) the examiner should also identify any current right elbow disability and opine whether it is at least as likely as not that any such disability is related to any period of military service.

Regardless of whether the examiner's opinion as to any question is favorable or negative, the examiner must provide support for his/her opinion(s). This includes reference to lay or medical evidence contained in the claims folder, if appropriate, or to known medical principles relied upon in forming his/her opinion. As part of the opinion, the examiner must identify the medical reasons to accept or reject the Veteran's statements regarding his in-service foot and elbow injuries and continuity of symptoms since service.

If the examiner determines that he/she cannot provide an opinion on any issue at hand without resorting to speculation, the examiner should be asked to explain the inability to provide an opinion, identifying precisely what facts could not be determined. In particular, he/she should comment on whether an opinion could not be rendered because the limits of medical knowledge have been exhausted regarding the etiology of any diagnosed disorder or whether additional testing or information could be obtained that would lead to a conclusive opinion. See Jones v. Shinseki, 23 Vet. App. 382, 389 (2010). (The AOJ should ensure that any additional evidentiary development suggested by the examiner should be undertaken so that a definite opinion can be obtained.)

4. The AOJ must ensure that all medical examination reports and opinion reports comply with this remand and the questions presented in the request. If any report is insufficient, it must be returned to the examiner for necessary corrective action, as appropriate.

5. After undertaking any other development deemed appropriate, to include consideration of whether an examination is warranted in connection with the Veteran's claims of service connection for right and left leg disabilities, the AOJ should re-adjudicate the issues on appeal. If any benefit sought is not granted, the Veteran should be furnished with a supplemental statement of the case (SSOC) and afforded an opportunity to respond before the record is returned to the Board for further review. 

Thereafter, the case should be returned to the Board for further appellate review. By this remand, the Board intimates no opinion as to any final outcome warranted. No action is required of the Veteran until he is notified. The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This case must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).



_________________________________
MARK F. HALSEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs